Opijjiox of the Court.
ON the 13th day of December, 1813, George Loftus sold, and executed his bond with several securities to convey to Benjamin Davis, an undivided moiety of a tract of ten thousand acres of land, or thereabouts, it being part of the Pond Lick timber connection.
Fifteen hundred acres of [he moiety sold to Davis, was afterwards returned by him to Loftus, and Davis thereafter sold the residue, being thirty-five hundred acres, to Robert Cravens, andón the 1st of November, 1815, made an assignment to that import to Cravens, on the bond of Loftus.
Whilst Robert Cravens held the bond of Loftus under the assignment from Davis, and on the 25th of November, 1815, he contracted to sell to Abigail Hays, wife of Thomas Hays, twice the quantity of acres contained in a tract then held by the said Hays, and executed a bond to the said Abigail to make a general warranty deed for the quantity of acres to be taken out of the thirty-five hundred acres held by him under the assignment from Davis of Loftus’ bond, and therein pro^ *171 vid'itfg, that choice of the land to be conveyed, was to be made by Jeremiah Cravens. Subsequent to this, Thomas Hays approved and • confirmed the contract made With Robert Cravens, by his wife, and on the 15th of May, 1817, Robert Cravens assigned to William Harrison, all his right, title and interest in the land contained in the bond of Loftus, except the four hundred acres which ho states in the assignment he had sold to Thomas Hays,'and 'which he thereby reserved for him.
The four hundred acres reserved for Hays, -was selected by Jeremiah Cravens, and'an actual survey thereof made upon the ground, and Hays, prior to the 13th of June, 1817, settled thereon.
On the 13th of June, 1817, William Harrison by a writing on the bond of Loftus, assigned all his title, interest and claim to the land therein, to Robert Stephenson, James Stephenson, David Usher and Leander Mun-sell, to he divided between them, agreeable to a covenant entered into between them, the 12th of J une, 1817.
This assignment was made in pursuance to a previous sale which Harrison had made to the Stephen-sons, Usher and Munsell, of three thousand one hundred acres of land, (being the quantity of acres he was entitled to under the bond ,of Loftus, after a division,) at the price of four dollars per acre; and though the signment of the bond which' was originally for a moiety of the ten thousand adres, might imply an assignment of an undivided, interest, it is apparent from the covenant to which the assignment refers, that the parties intended a sale and purchase of particular parcels of the pond timber connection, among which is a survey of sixteen hundred acres, upon which Thomas Haysraen lived, and out of which the four hundred acres reserved by Robert Cravens for Hays, has been surveyed.
On the same day, Harrison assigned the bond on Loftus, he gave a bond to the Stephensons, Usher and Munsell, covenanting to put them in possession of a four hundred acre tract of land, on which- Thomas Hays then lived, against the first day of October next thereafter, and describing the same as having been sold by him to them, at the same time reserving four hundred acres elsewhere for Hays.
Except'the four hundred acres upon which Hays lived, a-,conveyance has been made to the Stephensons, UsheraM. Munsell, by Loftus, for all the land^o which *172 <]iey became entitled under the purchase from Harrison, together with the four hundred acres reserved by Harrison for Hays in his bond to them; but that four hundred acres has since been reconveyed by them to Harrison, and by Harrison since sold and conveyed to another person.
The bond which Harrison gave to the Stephensons, 'Usher and Munsell, for the four hundred acres upon which Hays lived, has not, however, been fulfilled on the part of Harrison; though it is in proof, that Hays was not only desirous io sell, but has, in fact, since sold to others, at the price of ten dollars .per acre.
At the time of the purchase, the Stephensons, Usher and Munsell, executed several obligations to Harrison for the purchase money, payable at different periods, part of which obligations have since been put in suit, and judgments recovered thereon at law.
To be relieved from those judgments and obtain an abatement of the price agreed to be given for the land, the Stephensons, Usher and Munsell exhibited their bill in equity, and obtained an injunction against the judgments at law.
The bill sets out the preceeding facts, and charges, that the tract upon which Hays lived, formed a material inducement to the contract; that it is, in value, greater than an average 400 acres, and relying upon the covenant of Harrison to quiet Hays’ claim and put them in possession thereof, the complainants made the purchase of Harrison. The bill charges a wilful and fraudulent neglect, on the part of Harrison, to comply with his undertaking in relation to the tract of Hays, and insists upon an abatement of the price equivalent to the value of that tract. The bill also charges, that the complainants have paid $142 50 1-4,' for which they have received no credit, and insists upon that payment being applied to an extinguishment of so much of the judgments. There are many other suggestions contained in the bill; but as we suppose that they can form no essential hearing upon the merits of the contest, we have not deemed it material further to notice them.
The answer of the defendants throws the .complainants on the proof of their equity, and denies the'.propriety of any decree for relief. ■.?
*173 The court below, on a final hearing, being of opinion that the complainants were entitled to relief for sixteen hundred dollars, the value of Hays’ tract, when estimated according to the price agreed to be given per acre for the entire purchase, perpetuated the injunction for that amount; but dissolved the- injunction with damages, as to the residue of the judgments at law.
From that decree the Stephensons and JJsher have appealed to this court.
From the exhibits and. evidence in the cause, it is perfectly clear, that Harrison held no interest in the four hundred acres possessed by Hays, when he made the sale to the complainants. Harrison was the as-signee of Robert Cravens, to whom the bond of Loftus had be'en assigned by Davis, and before Cravens .assigned the bond to Harrison, he had sold to Hays four hundred acres of the land described in the bond, to be chosen by Jeremiah Cravens who is proved to have selected for Hays the four hundred acres upon which Hays resided at the time of Harrison’s sale to the complainants. It is true, there is no direct evidence in the record, of a partition having been made of the ten thousand acre tract, between either Davis to whom Loftus gave the obligation, or his assignee, Robert Cravens, and Cook, who seems to have been the proprietor of the other moiety, previous to Die sale by Cravens to Hays; but the assignees of Loftus’ bond appear throughout to have acted upon an understanding, resulting probably from an agreement with Cook, that a division would be made, so as to give to the holders of Loftus’ bond the survey out of which Hay,?’ 400 acres were laid off. If, however, such had not been the understanding, it is obvious, after the sale by Cravens to Hays, that Harrison, through the assignment which was made to him by Cravens, and which expressly reserves the 400 acres to Hays, can have derived no interest in Hays’ tract.
We must, therefore, assume the fact to be, that in selling to the complainants the tract of Hays, and in giving his obligation to put them in possession thereof, Harrison sold and covenanted to deliver possession of land to which he had no interest, either legal or equitable; anjffihe main question for the decision of this court,,.|gfe to the extent of abatement in the price agreed wlb given for the entire purchase, which should *174 be made in consequence of Harrison not complying with such a sale and covenant.
The court below was of opinion that four dollars per acre, for the 400 acres of Hays, being the average price agreed to be given for the 3,100 acres, would be a sufficient abatement in the original purchase money, and we should concur in that' opinion, were the circumstances of this case like that of a vender selling land, supposing it to be ’his, and under that supposition entering into a covenant to convey; but being unable to comply with his covenant, in consequence of a defect in the title to part of the land possessing no extraordinary advantages over the residue, and which formed no peculiar inducement with the vendee to make the purchase. In-that case, the failure of the vender to perform his covenant, would be the result of no fault in him; and by insisting on a partial performance of the contract, the purchaser ought not to be allowed to throw upon the vender a burthen greater than the value of the land which could not be conveyed, according to the price per acre for the whole tract. But such a case bears no analogy to the present case. Here, it is apparent that Harrison not only had no title to the tract possessed by Hays, but that prior to his sale to the complainants be must have had a perfect knowledge of Hays’ right; and although the sale was for 3,100 acres, including the tract of Hays, it is in proof that the 400 acres of Hays formed such an essential inducement to the purchase, that without the separate and specific covenant of Harrison for that part, the complainants would not have concluded the purchase. Besides, the proof is satisfactory, that the tract of Hays is in value greater than an average 400 acres, and was so considered by the complainants when making the purchase; and after selling the land, Harrison, for an adequate sum, might have obtained from Hays, his 400 acre tract.
The failure of Harrison to comply with his covenant, thus made, and which might have been thus fulfilled, instead of being the result of an honest inability to perform his undertaking, must be ascribed to a wilful and fraudulent intention not to comply with his stipulations in relation to the tract of Hays, and ought to subject him to the .complainants’ demand for compensation, in a sum equal to the value of the tract of Hays, together, with the accruing interest thereon. The. value should- *175 be ascertained by the inquest <$" a. jury, who, in their inquiry, ought to, be confined to the first of October 1817, the time when, by the covenant of Harrison, the possession of Hays’ tract was to be delivered to the complainants. It was the failure of Harrison'to perform, on that day, what he had contracted to perform, that gave the complainants a right to compensation; andas they have not yet paid the purchase money, a deduction therefrom, of the then value, together with interest thereon; is all that in justice should be allowed them for the breach of Harrison’s covenant.
The decree must be reversed with costs, the cause remanded to the court below, and after the value of Hays’ tract on the first of October 1817, is ascertained by the inquest of a jury, a decree must be entered in favor of the complainants, perpetuating their injunction for the amount thereof, and interest thereon from the first of October 1817, together with such further credits as the complainants may appear, from the evidehce and exhibits in the cause, to be entitled to;- and such further orders and decrees there made, as may-- not be inconsistent with the principles of this opinion.