# Snodgrass, King's Adm'r, *v.* Reynolds.

*Action by Lessee for Breach of Covenants in Lease.*

1. *Measure of damages for breach of contract, generally.*—As to the measure of damages for a breach of contract, the general rule of the common law is one of indemnity, intended to give compensation for the loss sustained, and, as far as practicable, to put the plaintiff in the same condition he would have been if the contract had been fully performed.

2. *Same ; as between vendor and purchaser.*—As between the vendor and the purchaser of land, where the former is unable to make title, but is guilty of no fraud or wrongful conduct, the purchaser can only recover the purchase-money paid, with interest; but this rule is exceptional, and does not apply to sales of personal property, nor to executory sales of land.

3. *Same ; as between lessor and lessee.*—As between lessor and lessee, where the latter sues for the breach of an express stipulation to put him in possession, the general rule must govern, though the lessor was guilty of no fraud or wrongful conduct; and the measure of damages is, not the consideration paid, with interest, but the value of the lease.

4. *Same ; proof of value of crops.*—The leased premises consisting of a meadow of about thirty acres, sown in "Johnson grass," a crop of which was then ready to be mowed, the plaintiff may prove how many crops the land would produce each year with ordinary seasons, and the probable quantity and market value of each crop ; not as a basis for the recovery of profits as such, but as facts to be considered by the jury in estimating the value of the use of the land during the term—that is, the value of the lease.

5. *Admission of evidence generally.*—When evidence is offered and admitted generally, no specific purpose being mentioned, and it is admissible for any legal purpose, it will be presumed to have been admitted for that purpose, unless the bill of exceptions shows the contrary.

6. *Trespass on leased premises by stranger.*—When the possession of the leased premises is open and unobstructed at the time of the renting, and there is only an implied covenant on the part of the lessor that they shall be open to entry, a subsequent trespass or intrusion by a third person is a wrong against the lessee ; but, if there is an express stipulation by the lessor to put the lessee in possession, such subsequent trespass, before the lessee has entered, is a wrong against the lessor.

7. *What constitutes partnership ; who are proper parties plaintiff.* When the lessee of land contracts in his own name, but one-half of the money paid in cash is furnished by a third person, under an agreement

between them that he shall become a partner if the lessee acquires possession; this does not constitute a partnership between them, possession never having been obtained, and does not prevent the lessee from maintaining an action in his own name alone for a breach of the stipulation for possession.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. S. H. SPROTT.

This action was brought by H. C. Reynolds against Frank R. King, and was commenced on the 31st July, 1878. The complaint, as amended, contained three counts, each of which claimed damages for an alleged breach of covenant or stipulations contained in a verbal lease of a tract of land, rented by plaintiff from defendant on the 8th May, 1878, for the remainder of the year; the consideration or agreed price being $300, of which sum $250 was paid in cash, and the plaintiff gave his note for the remaining $50. The leased premises consisted of a field containing about thirty acres, on which a crop of "Johnson grass" was growing. The first count of the amended complaint alleged that defendant, for the consideration specified, agreed to allow and permit plaintiff to gather and use the crop of grass then growing on the land, and all that might grow during the remainder of the season, which was of great value; and that said defendant did afterwards, during the season while said grass was growing, "violate the said agreement by refusing and preventing plaintiff from mowing and gathering said grass." The second count alleged that the land was valuable for hay, the net profits from which would have amounted to $1,000; "that by the terms of said agreement defendant undertook and promised to put plaintiff in possession of said field, and to allow him to enjoy the same during said year; that plaintiff demanded of defendant the possession of said land, and defendant did not comply with said demand, but failed to put plaintiff in possession, whereby plaintiff was deprived of getting possession, and gathering the crops on said land during said term." The third count alleged that, "at the date of said agreement of renting, the defendant was in the possession of said land, and, contrary to the stipulations of said contract and agreement, retained the possession during the said term of renting, and would not allow plaintiff to enter upon said land during said term," &c., whereby the crops of grass were wholly lost to plaintiff. There was a demurrer to the third count, which was overruled; but the record does not show what causes of demurrer, if any, were specifically assigned. The defendant pleaded "the general issue, in short by consent, with leave to give in evidence anything that can be well pleaded;" and the cause was tried on issue joined on this plea.

On the trial, as appears from the bill of exceptions, the

plaintiff introduced one McMath as a witness, with whom, acting as agent for the defendant, the contract of renting was made, and who testified to the terms of the contract as stated; also, that he received the money and note from plaintiff for the rent as stipulated, and sent them to defendant, who thereupon ratified what he had done. He further testified as follows: "At the time of renting said land, plaintiff said to him, that he must put him in possession; to which he (witness) responded, that he would, and that he would go and see Webb Shortridge about it; and witness thereupon went off to where said Shortridge was, a short distance off in the town of Montevallo, and told him that he had rented the land to plaintiff, and wanted to put plaintiff in possession of the same. Shortridge got very angry at this, and replied, in an angry manner, that plaintiff should not have the possession of the field, and should not cut the grass off the same; that he intended to cut it himself, and would shoot any man who attempted to go upon the land; that he had possession of the field, and intended to keep it. This conversation was immediately reported to plaintiff, and plaintiff did not get possession of the land, but the grass was cut by said Shortridge. It was admitted that said Shortridge was a nephew of the defendant, and lived in the dwelling-house on defendant's farm, of which said field was a part, and about a half-mile from said field; and that he lived at the same place the year before, and had control of the entire plantation, including said field. Said witness testified, also, that Shortridge commenced to cut the grass the next day, and remained in possession of the land for the balance of the year 1878." Another witness for the plaintiff testified to facts showing that Shortridge claimed and had possession of the field during the year 1878; and the plaintiff, testifying as a witness for himself, stated that, on the day after the renting, Shortridge came to him, having a double-barreled gun, asserted his possession of the land, and threatened to kill plaintiff if he attempted to enter. It was proved, also, that the defendant was notified of the conduct and declarations of said Shortridge, and that he offered, some time in July, 1878, to rescind the contract with plaintiff, returning the money and the note; but plaintiff refused to accept the proposal." The defendant, testifying as a witness for himself, stated, "that he did not rent said field to said Shortridge, and Shortridge was not his agent in 1878; that he had not given Shortridge any right, authority, control or possession of said field, at any time in 1878; and that Shortridge's interference with said field, after it was leased to plaintiff, was without authority from him, and against his wishes." The plaintiff testified, also, that of the money paid by him in cash on the lease, one half was money which he

[Snodgrass, King's Adm'r, v. Reynolds.]

owed to one Charles S. Rowley; "that there was an under-standing between him and Rowley, at the time, that if he succeeded in renting, and got possession of the land, they were to cut and share the grass in partnership, and that the terms of the partnership were to be agreed on and put in writing after he had secured said field; and that no such agreement was ever consummated, as he never obtained possession thereof."

The witness McMath testified, also, "that a fine crop of grass was growing on the land at the time of said renting, and was ready to be cut; and that it was worth at the time, standing on the land, $300." This evidence was admitted without objection, so far as the bill of exceptions shows; but afterwards, during the further examination of the witness, plaintiff having asked him, what the standing crop was worth, how many crops could be grown on the land each year, with ordinary seasons, the quantity of each crop, the market value of the grass as hay, and the net profit per ton, the defendant objected to each question and answer, and duly excepted to the overruling of his several objections. The witness answered, in substance, that the land would produce each year, with ordinary care and attention, and ordinary seasons, four crops of hay, averaging twenty-five tons each; that the market price of the hay was about $20 per per ton, and that the net profit was $10 per ton. The bill of exceptions contains, also, these remarks: "The evidence tended to show, also, that the market value of the lease was from $300 to $600. . . The evidence tended to show, also, that the market value of the lease to the plaintiff on the 8th May, 1878, was $300."

"The foregoing was all the evidence adduced on the trial of this case, and the court thereupon charged the jury, among other things, as follows: If the jury believe, from the evidence, that Shortridge was in possession of the field at the time of the renting to plaintiff, and that McMath, as the agent of defendant, when renting said land to plaintiff, agreed to put him in possession of the same; then it was the duty of defendant, or his said agent, to comply with this agreement."

The defendant excepted to this charge, and requested the following charges in writing, each of which was refused, and exceptions duly reserved to their refusal:

1. "If the jury believe, from the evidence, that McMath was the defendant's agent to rent the field, and did rent it to the plaintiff, then such renting would put an end to any agency that Shortridge might have had as to that field; and if said Shortridge, after such renting, interfered with the plaintiff's enjoyment of the renting, such interference would be a trespass, for which the defendant would not be responsible."

2. "If the jury should find for the plaintiff, and should be-

[Snodgrass, King's Adm'r, v. Reynolds.]

lieve from the evidence that the defendant was not guilty of any fraud or wrongful conduct in the matter, then they will find for the plaintiff the amount he paid for the lease, with interest to this time."

3. "If the jury believe, from the evidence, that the defendant gave no authority to Shortridge to exercise any acts of possession over the field in controversy, and that Shortridge was not his agent as to this particular field; then Shortridge's entry upon the said field, claiming possession, was a trespass; and unless said Shortridge was present, in person or by his representative, upon said field, at the time of the making of said lease, resisting, or attempting to resist plaintiff's entry upon said field, then they must find for defendant."

4. "If the jury believe, from the evidence, that at the time of the making of the contract of lease, upon which this action was brought, it was understood and agreed between plaintiff and Charles S. Rowley that said Rowley was to share with plaintiff in the benefits of said lease; then plaintiff is not entitled to recover in this case."

5. "If the jury believe, from the evidence, that one half of the money paid to King for the lease was furnished by said C. S. Rowley, and that plaintiff was authorized by said Rowley to pay this money on said lease, under an agreement between them that he was to share with plaintiff in the benefits of said lease; then plaintiff can not recover in this action."

The charge given, the refusal of the several charges asked, the rulings on evidence to which exceptions were reserved, and the overruling of the demurrer to the third count of the amended complaint, are here assigned as error.

The appellant died while the case was pending in this court, and the appeal was revived in the name of Alex. Snodgrass as his administrator.

S. F. RICE, E. P. MORRISSETT, and PORTER & MARTIN, for appellants.—(1.) The defendant is not liable at all, under the facts shown in this case. A covenant or stipulation for quiet enjoyment, whether express or implied, means that the tenant shall not be evicted by the lessor himself, or persons holding under him, nor by title paramount; and it is not a warranty against the tortious conduct of third persons.—Taylor's Landlord and Tenant, § 305; Sutherland on Damages, 146. (2.) If liable at all, he can only be required to refund the money paid, with interest; as he was guilty of no fraud or wrongful conduct in keeping plaintiff out of possession, and the action is not founded on a charge of fraud.—*Kelly v. Dutch Church*, 2 Hill, N. Y. 116; *Flurean v. Thornhill*, 2 W. Bla. 1078; *Driggs v. Dwight*, 17 Wend. 71; Suth. Damages, vol. 3, p. 146;

[Snodgrass, King's Adm'r, v. Reynolds.]

4 Kent's Com., mar. 477; Wait's Actions & D., vol. 2, p. 463;
Taylor's L. & T., § 317, notes; *Noyes v. Anderson*, 1 Duer,
N. Y. 342; *Kinney v. Watts*, 14 Wend. 38; 4 Denio, 546;
8 Gratt. 16; 42 N. Y. 167; 11 Penn. 139; 14 Pick. 128;
4 Mass. 108; 4 Cush. 14. (3.) The evidence offered and ad-
mitted to prove the amount, value and net profits of the crop,
not which were raised during the term, but which might be
raised during ordinary seasons, ought. to have been excluded.
*Sims v. Glazener*, 14 Ala. 695; *Burton v. Holly*, 29 Ala. 18;
*Donnell v. Jones*, 13 Ala. 490; *Higgins v. Mansfield*, 62 Ala.
267; *Pollock & Co. v. Gantt*, 69 Ala. 573. (4.) The demurrer
to the third count ought to have been* sustained.—Authorities
above cited.

H. C. TOMPKINS, and HENRY WILSON, *contra*.—The plaintiff's
right to recover in this case was settled by the former decision.
67 Ala. 229. The measure of his damages was, at least, the
value of the lease during the term; and any fact which tended,
in any degree, to shed light on that question, was admissible as
evidence.—*Chatterton v. Fox*, 5 Duer, 64; *Engel v. Fitch*,
L. R. 3 Q. B. 314; *Williams v. Oliphant*, 3 Ind. 271; *Adair
v. Boyle*, 20 Iowa, 238; *Driggs v. Dwight*, 17 Wend. 71;
*Field v. Granger*, 4 Selden, 115; *Woodbury v. Jones*,
44 N. H. 206; Th. Raym. 77; 3 Suth. Damages, 155–57. If
plaintiff had bought only the standing crop of grass on the
land, and had been prevented from gathering and saving it, he
would have been entitled to recover the market value of that
crop, less the expenses of cutting, saving, and carrying it to
market—that is, its net market value; and having bought all
the crops that might be grown on the land during the term, he
might have asked for the reasonable profits he would probably
have made out of the contract.—*Hinckley v. Beckwith*,
13 Wisc. 31; *Dobbins v. Duquid*, 65 Ill. 464; *Dexter v. Man-
ley*, 4 Cush. 14; *Allison v. Chandler*, 11 Mich. 542; *Shafer
v. Wilson*, 44 Md. 268; *Herring v. Skaggs*, 62 Ala. 188; *Cul-
ver v. Hill*, 68 Ala. 66; *Robinson v. Bullock*, 66 Ala. 548.
The rule as to the measure of damages between vendor and
vendee, prevailing in England and elsewhere, has never given
satisfaction, and it does not apply to such a case as this.
L. R. 3 Ex. 44; 42 N. Y. 167.

CLOPTON, J.—The defendant requested the following in-
struction: "If you should find for the plaintiff, and should
believe fr--- the evidence that the defendant King was not
guilty of any fraud, or wrongful conduct in the matter, then
you will find for the plaintiff the amount he paid for the lease,
with interest to this time." When referred to the evidence,

[Snodgrass, King's Adm'r, v. Reynolds.]

the proposition of this charge is, that in an action by the lessee, for the breach of an express term in the contract to put the lessee in possession, the measure of damages, in the absence of fraud or wrongful conduct, is the consideration paid for the lease, with interest.

The general common-law rule, as to the measure of damages for the breach of a contract, is one of indemnity; intended to give compensation for the loss sustained, and to put the party, as nearly as practicable, in the same condition in which he would have been *had the contract been performed*. In an action against a vendor, for a failure or refusal to perform a contract for the sale of personal property, the measure of damages is the difference between the contract and market prices at the time of the breach. An exception to the general rule, in favor of a vendor of real property, who, from inability to make title, fails to perform his contract of sale and conveyance made in good faith, was first admitted in *Flurean v. Thornhill*, 2 W. Bla. 1078; where it was held, that in such case the vendee could recover only the amount of payments made, with interest and costs. The doctrine of this case has been followed in many subsequent cases, and may be regarded as the settled rule in England. It has been adopted in this and many other States. In *Bibb v. Freeman*, 59 Ala. 612, the purchase-money, with interest, was held to be the measure of damages, in a recovery based on a broken contract of seizin; and in *Kingsbury v. Milner*, 69 Ala. 504, the same measure of damages was applied in a broken contract of warranty.

The rule in *Flurean v. Thornhill* is an admitted exception to the general rule—its effect being to put the purchaser in the condition he would have been *had no contract been made*. It has not generally been satisfactory to the courts, and has been repudiated by many; and individual members of courts which have followed it, while yielding to the weight of authority, have expressed dissatisfaction. Frequent attempts have been made to restrict its application, or to relax or modify it in particular cases. If the vendor is guilty of wrongful conduct, he is generally regarded as without the benefit of the rule, and liable for compensatory damages; though it has been sometimes said, that in such case the action should be founded on the *tort*. The rule may now be regarded as "confined to cases of inability to perform, arising from a discovery, after the contract, of a previously unsuspected defect in the vendor's title."—*Pumpelly v. Phelps*, 40 N. J. 60; *Drake v. Baker*, 34 N. J. L. 358; *Stevenson v. Harrison*, 3 Litt. 170; 2 Suth. on Dam. 207.

Counsel for appellant strenuously insist, that the rule as between vendor and vendee ought to be applied between lessor

and lessee. The contention is founded on analogy, based on the doctrine that a lease for a defined term is, in its nature, a sale of an interest in the land *pro tanto.* And our attention has been called to the decisions in New York, in which the rule was applied to cases of eviction of the tenant; and it was held that the rents reserved, when no other consideration is paid, are regarded as a just equivalent for the use of the demised premises. These decisions rest the rule on the assumption, that the parties agree on the rent reserved as the value of the lease; and as the rent ceases on eviction, "the lessee is relieved from a burden which must be deemed equal to the benefit which he would have derived from the continued enjoyment of the property."—*Kelly v. Dutch Church,* 2 Hill, 105; *Noyes v. Anderson,* 1 Duer, 342. This court is urged to follow the New York decisions.

When this case was before us on a former appeal (67 Ala. 229), there was no proof that the defendant expressly bound himself to put the plaintiff in possession. On the record as *then* presented, it was said: "The prime motive of the contract is, that the lessee shall have possession; as much so, as if a chattel were the subject of the purchase. Delivery is one of the elements of every executed contract." On the last trial, there was evidence tending to show that one of the express terms of the contract was, that defendant should put plaintiff in possession. If this evidence be believed, until the plaintiff was put in possession, the contract remained unexecuted; it was an executory lease of the premises. Being executory, if we follow analogy, the damages must be assessed on the same principle as in cases of executory contracts for the sale and conveyance of land.

Courts, which have followed the doctrine in *Flurean v. Thornhill,* have applied the general, instead of the exceptional rule, in actions founded on executory contracts. In *Taylor v. Barnes.* 69 N. Y. 430, ALLEN, J., alluding to the rule which limits the recovery to the consideration, says: "But it is not applied in cases of executory contracts, where the vendor has sold lands to which he has not a perfect title, where he undertakes to complete and perfect it. In this case, there is an express agreement for indemnity; and a recovery, which does not give the vendee the benefit of his bargain, and the value of his purchase, does not indemnify him against loss. The true rule of damages, as a measure of indemnity in such case, is the value of the land at the time of the eviction, or other breach of the contract, with interest from that time." And *this* court has held, that in actions on executory contracts for the sale of lands, the measure of damages is the value of the land at the time of the breach.— *Whitesides v. Jennings,*

[Snodgrass, King's Adm'r, v. Reynolds.]

19 Ala. 784; *Pinkston v. Huie*, 9 Ala. 252; *Lewis v. Lee*, 15 Ind. 499.

Where the exceptional rule between vendor and purchaser is not extended, the general rule as to the measure of damages in an action against the landlord, where possession has never been delivered, or the tenant has been evicted by a paramount title, is the difference between the rent reserved and the value of the land for the term.—*Adair v. Bogle*, 20 Iowa, 238; *Dexter v. Manley*, 4 Cush. 14; *Dobbins v. Duquid*, 65 Ill. 464; *Newbourough v. Walker*, 8 Gratt. 16. In England, courts which followed the exceptional rule, have refused to apply it between lessor and lessee. The exceptional rule has been repudiated except as between vendor and vendee, and the general rule applied in actions on broken covenants in contracts of lease. In *Locke v. Furze*, 19 C. B. N. S. 96, BYLES, J., in respect to the rule says: "That is an anomalous rule, confined, for the sake of convenience, to the case of vendor and purchaser. In all other cases of breach of contract, the measure of damages is the loss the plaintiff has proximately sustained by reason of the breach of the defendant's contract." This case was, on appeal, affirmed in the Exchequer Chamber, L. R. 1 C P. 441. MARTIN, B. says: "It is clearly an exception; it is contrary to the rule of the common law; it had not the unqualified approval of Lord TENTERDEN; and I see no reason why it should be extended." And CHANNELL, B. observes: The testator expressly bargained for that which he could not perform; and therefore, I think, the proper principle, upon which the damages should be assessed, is a full compensation to the plaintiff for that which he has lost, not limited to the amount actually paid by him." Where the lessor had given a covenant for quiet enjoyment, and the lessee was evicted, it was also held in *Williams v. Burrell*, 50 E. C. L. 401, that he was entitled to recover the value of the term. And in *Trull v. Granger*, 8 N. Y. 115, it was held, that the tenant may maintain an action for damages upon the implied agreement of the lessor to yield him possession, or in *tort* for the violation of the duty arising from the relation of landlord and tenant; and that the measure of damages, in either case, is the difference between the rent reserved, and the value of the premises for the term. It is true that, in this case, the lessors denied the right of possession.

The record exculpates the lessor from any fraud, or wrongful conduct. It appears that he was not only willing, but made efforts to perform his contract. We have already said, that a distinction has been recognized, where the vendor is innocent, and where he is guilty of wrongful conduct. Without discussing the sufficiency of the grounds on which this difference

rests, we can perceive no substantial reason for its extension to contracts between lessor and lessee. Whether the lessor acted from a bad motive, or in good faith, the *actual pecuniary* damage to the lessee is the same in either case.—*Dohorty v. Dolan*, 68 Me. 87 ; *Walker v. Moore*, 10 B. & C. 416. The defendant bargained for that which he was unable to perform—to put the plaintiff in possession—and on principle, he is bound to make compensation to the plaintiff for the loss he has sustained.

The grounds on which the rule as between vendor and vendee is founded, have been, as assigned by one of the justices in the leading case, an implied condition that *the vendor has good title ;* and also, as stated by subsequent justices, the uncertainty, arising from the complications of the law, that the vendor can effectively make a good title, and the vendee taking the property with that knowledge. It has also been said, that the rule finds its defense "in considerations of public policy, since the amount of damages, necessary to compensate the vendee, might in some cases ruin an innocent vendor." Neither of the grounds exists, nor do the considerations of public policy apply, in the matter of a lease. Though a lease for a defined term may be, in its nature, a sale of a partial, limited interest in the land, it is not a freehold, but a chattel—the right to possess and use for the specified term. It seems, on reason, that the *general* rule, which governs in actions on contracts for the sale of specified chattels, is more appropriate, and more largely meets the measure of compensation, than an *exceptional* rule admitted on grounds and considerations confessedly peculiar to vendor and vendee. There can be no difference in principle, whether the contract be for the sale of personal property, or for the possession and use of real *property* for a year or term of years.— *Hopkins v. Lee*, 6 Wheat, 109.

We do not wish to be understood as expressing or intimating a desire or purpose to disturb the rule as between vendor and vendee, which, from its long existence, may be regarded as a rule of property. What we have said in respect to it has been as bearing on the question of its extension to cases other than those in which it was first admitted. Though there is no intent to interfere with the rule as now confined, we can see no sufficient reason to extend it to cases other than vendor and purchaser. Such extension would be the extension of an exceptional, and, it may be said, arbitrary rule—engrafting exceptions on a general rule, which are not founded on pressing reasons, or a necessity to promote the ends of justice. Such extension would transgress the purpose of courts to carry out contracts as made by the parties, and not to make contracts for them, by implying conditions not expressed, and not justified by any authorized legal interpretation. Especially are we un-

willing to admit it in a recovery based on the breach of an express term of a contract of lease to put the tenant in possession. If the lessor chose to absolutely agree to deliver possession, he must be held responsible for his failure, though he may have acted in ignorance of an adverse occupancy, or, if aware of it, relied on his ability to remove the obstruction. In such case, the general rule must govern. Anything less will not compensate the lessee for the loss of his bargain.

The plaintiff was allowed to prove, against the defendant's objection, that the leased premises would probably yield, with ordinary and average seasons, four crops of hay annually; and also the probable quantity and market value of such crop. We do not understand that the evidence was offered or admitted as a basis for the recovery of profits, *as such*, but as facts from which the jury might draw a conclusion as to the value of the lease. The competency of such evidence, when offered for this purpose, should, on reason, be governed by the same principle as the admissibility of proof of profits, when their loss constitutes the measure of damages. While profits, when contingent or speculative, or when their loss is not the natural and proximate result of the breach of a contract, are not recoverable, they are allowed when they form a constituent element of the contract, and the amount can be estimated with reasonable certainty from established data.—*Brigham v. Carlisle*, 78 Ala. 243. So, in order that profits may constitute the basis of a legitimate inference as to the value of the use of leased land, they must have been an element of the contract, and there must be established *data* from which the amount can be ascertained with reasonable certainty.

The land was a meadow of about thirty acres, sown in what is commonly known as "Johnson grass." At the time of the leasing, there was a crop ready to be mowed. The condition of the land, and of the crop of grass growing thereon, and the kind, nature, and usual productive capacity of the grass, established *data*, from which the quantity of annual yield can be ascertained with reasonable certainty. It is different where land is leased for general and undefined agricultural purposes. That the land was sown in grass, one crop of which was matured, and the probable amount of production, were elements of the value of the lease. A party is not confined to proof of value by the opinion of witnesses; it may be proved by facts and circumstances. The state of the land, the kind of grass in which it was sown, the annual yield in the usual course of nature, and the market value, were facts proper to be considered by the jury in estimating the value of the use of the land for the term—the value of the lease.—*Dexter v. Manley*, 4 Cush., *supra*.

[Snodgrass, King's Adm'r, v. Reynolds.]

The bill of exceptions does not show for what special purpose the evidence was offered, nor what instructions were given as to the measure of the damages. We must, therefore, presume that the evidence was received for an admissible purpose, if admissible for any object, and that the instructions were in accordance with law.

If it be conceded, that the charge requested, as to the effect of an interference by a stranger after the renting, asserts a correct legal proposition, on the hypothesis, that there was an implied covenant that the premises shall be open to entry, it ignored material facts, which the evidence tended to show, and which rendered an explanation or qualification of the charge necessary to prevent misleading. If the possession is open and unobstructed at the time of renting, and there is only an implied covenant that the premises shall be open to entry, a trespass thereafter by a stranger is a wrong against the lessee.—67 Ala. 229. But, if there be an express term of the contract, that the lessor shall put the tenant in possession, a trespass by a stranger, before the tenant is put into possession, is a wrong against the lessor. The charge is restricted to an interference *after the renting*, without respect to the fact or time of putting the tenant into possession. As the legal effect of such interference is met and avoided by other facts, which there is evidence tending to show, the charge was properly refused.—*McLemore v. Nuckolls*, 37 Ala. 662.

There was no proof that Rowley was a co-partner, or joint adventurer with plaintiff. The evidence shows that he furnished half of the money, with which the plaintiff made the cash payment, and that he was to become a partner if the plaintiff obtained possession. But the plaintiff never obtained possession; and if the only evidence on the question be believed, there was no co-partnership. The charges asked, that plaintiff could not maintain the action without joining Rowley as co-plaintiff, based on the hypothesis that he furnished a part of the money, were abstract, and properly refused.—*Thrash v. Burnett*, 57 Ala. 156; *Beasly v. State*, 59 Ala. 20; *Bain v. State*, 61 Ala. 75.

Affirmed.