BOWLING *ET AL.* v. MANGUM *ET AL.*
TREDWAY v. SAME

(115 S. E., 212)

1. PARTITION—COURT NOT AUTHORIZED IN DECREE TO ADJUDICATE CLAIMS BY LESSEES TO WHOM SOME OF TENANTS IN COMMON HAD LEASED FOR DAMAGES AGAINST SUCH TENANT.—In an action for partition, in which lessees to whom tenants in common had executed lease without authority from cotenant were made parties, and in their answer asserted the validity of their lease as to the entire interest in the property, and asked that the sale, if ordered, be made subject to their rights as lessees of the whole property, but did not seek damages against tenants in common who executed the lease, the Court was not authorized to include in decree for partition sale a provision permitting lessees to proceed in such action for damages against tenants in common who executed the lease.

2. APPEAL AND ERROR—PARTY HAVING INTRODUCED LEGAL DEMAND BEYOND SCOPE OF PLEADINGS COULD NOT COMPLAIN THAT QUESTION WAS TRIED BY JURY WHERE THE COURT DIRECTED VERDICT.—In partition, in which lessees to whom some of the tenants who had executed a lease without authority from codefendant were made defendants, and the decree entitled lessees to assert their claim for damages against the tenants in common who had executed the lease, though such provision of decree was beyond the scope of the pleadings, the lessees, having proceeded in such action against such tenants in common for damages, could not complain that the question was tried by a jury, or that the Court by directing a verdict withdrew the issues from the jury and decided the case as he would have done if the reference had not been ordered, having dragged into an equity case a legal demand which was entirely out of place.

3. COURTS—DECREE FROM WHICH NO APPEAL HAS BEEN TAKEN BECOMES LAW OF CASE IN LATER PROCEEDINGS THEREIN.—A decree from which no appeal is taken becomes the law of the case in subsequent proceeding in the case to adjudicate rights as between the defendants pursuant to the decree.

4. TRIAL—ADMISSION OF TESTIMONY AFTER CASE CLOSED BY DEFENDANTS DISCRETIONARY WITH COURT.—It was within the discretion of the trial Court either to allow or reject testimony on question of damages after the defendants had closed their case.

5. APPEAL AND ERROR—EXCLUSION OF TESTIMONY NOT CONSIDERED WHERE RECORD DOES NOT SHOW WHAT TESTIMONY WOULD HAVE BEEN.—Exclusion of evidence will not be considered on appeal where the record does not show what the testimony would have been.

6. LANDLORD AND TENANT—IN LESSEES' SUIT FOR DAMAGES FOR EVIC-
   TION, PROFITS BY LESSEES IN NEW BUILDING COULD NOT BE SET OFF
   AGAINST CLAIM FOR DAMAGES.—Where warehouse lease was void
   because of lessor's want of authority from cotenant to execute
   lease, the profits made in new warehouse procured by the lessees
   on removal could not be set off against their claim for damages
   against the lessor.

7. PARTITION—WHERE COURT REQUIRED TENANTS IN COMMON TO EXE-
   CUTE BOND FOR PAYMENT OF ANY DAMAGES ON WITHDRAWAL OF
   FUNDS, IT WAS ERROR TO REQUIRE CLAIMANTS OF DAMAGES TO EXE-
   CUTE BOND FOR PREMIUMS PAID BY TENANTS IN COMMON IF NO
   DAMAGES FOUND DUE.—Where decree for partition sale authorized
   lessees, to whom some of the tenants in common had executed lease
   without authority from cotenant, to prove claims for damages
   against such tenants in common in the partition action, and the
   Court required such tenants in common to give a bond conditioned
   on payment of damages in order to withdraw from the Master
   their share of proceeds of sale, it was error for the Court to re-
   quire the lessees to execute a bond conditioned on repayment to
   such tenants in common of premiums in the event that it should be
   finally decided that the lessees had suffered no damage.

Before SHIPP, J., and MEMMINGER, J. Florence, Jan-
uary, 1919; May, 1921. Affirmed and reversed.

Action by Robert H. Tredway, by John A. McCormick,
his committee, against Maynard Mangum, W. L. Umstead,
and R. T. Umstead, and J. E. Bowling and E. H. Lawrence,
individually, and as copartners doing business under the
firm name and style of Bowling & Lawrence. A judgment
was rendered providing that defendants Bowling & Law-
rence be allowed to take proceedings against the other de-
fendants for damages on account of the execution of an
attempted lease, and pursuant thereto defendants Bowling
& Lawrence filed a petition in such action against the other
defendants for such damages. From an order refusing to
refer the case, and an order refusing to direct a verdict
for the petitioners, and from the judgment on the verdict
directed for the other defendants, and an order providing
for discharge of bond executed by the other defendants,
on petitioners' failure to file a bond to refund to other

defendants premiums paid by them in the event that it should be finally decided that petitioners had suffered no damage, the petitioners appeal. Order refusing to refer case affirmed, judgment on directed verdict for other defendants reversed and remanded, and order relating to bond reversed.

*Messrs. Henry E. Davis* and *Willcox & Willcox,* for appellant, cite: *Cause should have been referred:* 78 S. C., 187; 69 S. C., 141; 69 S. C., 196; 99 S. C., 99; 113 S. C., 168; 8 Rich. Eq., 46; 23 S. C., 129; 27 S. C., 235. *Measure of damage:* 81 S. C., 181. *Liability of lessor for damage to lessee from defective lease:* 1 Am. Rep., 506; 58 Am. Rep., 601; L. R. 1 Com. P., 441; 53 A. L. R., 116; 3 Suth. Dams. (3d Ed.), Secs. 864, 865; 16 R. C. L., 770; 114 S. C., 533; 177 Fed., 109; Ann. Cas., 1912A, 859. *Notice of appeal acted as supersedeas:* Code Proc. 1912, Sec. 395.

*Messrs. Whiting & Baker,* for respondents, cite: *Admission of testimony after closing case is in discretion of Judge:* 110 S. C., 356; 26 R. C. L., 1041. *Measure of damages:* 1 Civ. Code 1912, Sec. 3536; 14 Wend. (N. Y.), 41; 179 Fed., 338; 39 Am. Rep., 797; 1 Am. Rep., 506; 183 Fed., 193; 4 Dallas, 441. *Duty to minimize damages:* 116 S. C., 55; 18 L. Ed., 752.

November 20, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a most unusual proceeding, and can only be understood by an extended statement.

There was a lot in the town of Timmonsville upon which a tobacco warehouse had been erected, and which belonged to Robert H. Tredway, Maynard Mangum, W. L. Umstead, and R. T. Umstead, as tenants in common, Tredway owning one-half undivided interest and each of the others named one-sixth. In April, 1916, Tredway had been declared insane, and was confined in a sanitarium. The property was

in immediate charge of Maynard Mangum.   On the first day of April, 1916, Maynard Mangum and the petitioners Bowling & Lawrence entered into a contract for the lease of the warehouse for the term of one year at a rental of $1,000 per annum, with an option in favor of the lessees for two additional years, after the expiration of the first year at the same rental.   This lease was executed by Maynard Mangum in the name of Tredway and Mangum.

The petitioners Bowling & Lawrence immediately entered into possession of the leased premises, and conducted during the years 1916 and 1917 therein the business of warehousemen for the sale of leaf tobacco.   On March 17, 1917, John A. McCormick, as the committee of Robert H. Tredway, who, as stated, had been declared insane, commenced an action against Maynard Mangum, W. L. Umstead, and R. T. Umstead, for the partition of said property held by them as tenants in common; Bowling and Lawrence, holding possession under the lease above referred to, were also made parties defendant.   All of the defendants, Maynard Mangum, W. L. Umstead, R. T. Umstead, J. E. Bowling, and E. H. Lawrence, were personally served with copies of the summons and complaint in that action.   The defendants Mangum and the two Umsteads filed no answers to the complaint.   The other defendants, Bowling and Lawrence, filed an answer asserting the validity of their lease, claiming the exercise of the option for an extended term of two years, and asking that, in case a sale for partition should be ordered, it be made subject to their lease.   This answer was not served upon their co-defendants Mangum and the two Umsteads.   Thereafter the case was referred to a special Master to take the testimony.   At the hearing Mangum was examined as a witness, and testified that he had authority to bind the other two tenants in common, the Umsteads, in the lease.   One of them, R. T. Umstead, was present in person, and the other, W. L. Umstead, was represented by his agent.

The case came on for a hearing before Circuit Judge Shipp, upon the testimony so taken, who rendered a decree dated January 19, 1918. By that decree Judge Shipp made the following findings:

(1) That Maynard Mangum had no authority to bind the interest of the lunatic, Robert H. Tredway, in executing the lease to Bowling and Lawrence, and that, as to the interest of Tredway, one-half, the lease was null and void.

(2) That Maynard Mangum did have authority to bind the interests of W. L. Umstead and R. T. Umstead in executing the lease, and that as to their interests the lease was effective.

(3) That, notwithstanding the lease, the plaintiff, as committee of Robert H. Tredway, was entitled to partition, that right being paramount, and that the right of the lessees of the interests of these tenants in common bound by the lease should be transferred to the fund arising from the sale of the interests of such lessors.

(4) That the property could not be divided in kind, and accordingly he ordered a sale of the premises on sales day in February, 1918.

(5) That, of the proceeds of sale, after the payment of certain attorney's fees and costs, one-half be paid to the committee of Tredway, and the remainder be held subject to the further order of the Court.

(6) That the lessees Bowling and Lawrence be allowed to take such proceedings as they may be advised, in this cause against the defendants Mangum and the two Umsteads "to collect any amounts that may be due to them by way of damages or otherwise, on account of execution of the attempted lease by Maynard Mangum of the interests of Robert H. Tredway of the premises described in the complaint, and to collect the same out of the interests of the said defendants Maynard Mangum, W. L. Umstead, and R. T. Umstead, hereinbefore directed to be held by the Judge of

13—S. C.—122

Probate, acting Master of Florence County, subject to the further order of this Court."

No appeal was taken by any of the parties from this decree.

As required by the decree, the Master of Florence County sold the property on salesday in February, 1918, and executed to the purchasers deeds therefor. The lessees Bowling and Lawrence surrendered possession to the purchasers.

The Master, out of the proceeds of sale, paid the attorney's fees, the costs, one-half of the net proceeds to the committee of Robert H. Tredway, and retained the other one-half belonging to the defendants Mangum and the two Ulmsteads, as directed in the decree.

Availing themselves of the privilege accorded to them in the decree, Bowling and Lawrence, on May 4, 1918, presented to the Court a petition in the main partition cause, rehearing the facts and proceedings hereinbefore stated, and alleging that, by reason of the eviction of the said lessees from the premises, and the deprivation of their occupancy during the year 1918, the last year of the stipulated term, they had been damaged to the extent of $3,000, which they were entitled to have paid out of the fund remaining in the Master's hands, belonging to Mangum and the two Umsteads. They prayed that approximate proceedings be had to ascertain the amount of said damages, and that the Master be required to pay the same when ascertained out of said fund. Upon the presentation of the petition Judge Shipp, on May 6, 1918, ordered that a copy of the petition and of the order be served personally upon the defendants Mangum and the two Umsteads, and that they be allowed twenty days for answering.

The petition was in a few days thereafter personally served upon the said defendants. Thereupon the defendants made a motion before Judge Shipp to open his decree of January 19, 1918, and to set aside so much of it as extended beyond the relief prayed for in the original parti-

tion complaint, especially so much thereof as related to the disposition of the interests of the defendants in the proceeds of sale and to the privilege accorded Bowling and Lawrence of taking proceedings in the cause to establish their claim for damages against the defendants. The matter for some reason did not come up before Judge Shipp until November 15, 1918, at which time he heard the motion and passed an order refusing it, and allowing the defendants further time for answering.

The defendant Mangum then filed an answer to the petition of Bowling and Lawrence, admitting the execution of the lease, but alleged that he intended, and it was so understood by the lessees, to affect the interest only of himself and the two Umsteads, and not in any wise that of Tredway; he denied that he was at all responsible for the termination of the lease by the partition sale, and contested the jurisdiction of the Court to include in the decree the provision in favor of Bowling and Lawrence; he denied that the lessees had suffered damage for the reason that they immediately procured another warehouse of equal facilities.

The defendants Umstead interposed a demurrer to the petition upon the ground that the claim of Bowling and Lawrence is based upon an alleged breach of an agreement made without authority by the defendant Maynard Mangum, in the name of Tredway and Mangum, and that there is no allegation connecting them with said agreement or making them chargeable with the breach of it, or responsible for the damage sustained by the lessees.

The petitioners Bowling and Lawrence then appealed to the Court for an order of reference upon the petition. On January 8, 1919, Judge Shipp passed an order refusing the motion, holding that the defendants were entitled to a jury trial upon the issue of damages claimed by the petitioners.

On February 15, 1919, Judge Shipp passed an order allowing the defendants to withdraw from the Master the funds in his hands belonging to them, upon their depositing

a bond of $4,000 as a substitute for the money. The defendants complied with this order, receipted the Master for the fund, and have since continued the bond in force by the payment of the premiums thereon. The cause was docketed on Calendar I, and called for trial at May term, 1921, Judge Memminger presiding. The demurrer of the Umsteads was overruled; the reply of Mangum was agreed to be treated, as the reply also for the Umsteads, and the case proceeded to trial before a jury.

At the close of the testimony for the petitioners the defendants moved for a nonsuit, which was refused. At the close of all the testimony each side moved for a directed verdict. The presiding Judge sustained the motion for the defendants upon the ground:

"When this contract was broken it was the duty of the parties to endeavor to minimize the damages and make them as little as possible. It appears that they did that, and, as a result of the breach of the contract, they not only did not lose anything, but they made a great deal more than they would have made if the contract had not been broken. How in the world the jury can give them any damages I cannot see. Therefore the case is not made out."

This ruling was apparently made upon the testimony that, after Bowling and Lawrence gave up the Tredway warehouse, known as the Farmers' Warehouse, they bought another warehouse of practically equal size and capacity, and continued in business at Timmonsville; that they made an addition to the warehouse secured by them, which increased the floor space substantially, and enabled them to handle during the year 1918 more than one-half of the tobacco that came to Timmonsville; that they made a net profit that year of $7,000 more than in any previous year, and that the warehouse for which they paid $18,000 could have been sold at the close of the year 1918 for $25,000.

The presiding Judge directed the jury to find the following verdict:

"We find that the petitioners have suffered no damage by reason of the breach of the alleged contract."

On May 18, 1921, two days after the rendition of the verdict, the petitioners gave notice of intention to appeal from Judge Shipp's order of January 8, 1919, refusing to refer the case, and from the refusal of Judge Memminger to direct a verdict for the petitioners upon the trial, and from the judgment on the verdict directed for the defendants.

On May 21, 1921, Judge Memminger passed an order in the case relating to the bond which the defendants had deposited under Judge Shipp's order of February 15, 1919. It provided that, if the petitioners did not within ten days file a bond for $250 to refund to the defendants the premiums paid by them for a continuation of the surety bond of $4,000; in the event that it should finally be decided that petitioners had suffered no damage, the $4,000 bond should be discharged.

The petitioners Bowling and Lawrence have appealed, and present by their exceptions the following questions for determination:

(1) Was Judge Shipp in error in refusing the petitioners' motion for an order referring the issues arising under the petition to the Master, and in holding that the defendants were entitled to a trial by jury as a matter of right?

(2) Was the trial Judge (Judge Memminger) in error in excluding the testimony of the witness Bane as to the value of the warehouse to petitioners the last year of the lease?

(3) Was the trial Judge in error in directing a verdict for the defendants?

(4) Was the trial Judge in error in passing the order of May 21, 1921, relating to the $4,000 bond?

As to the first question:

The provision in Judge Shipp's decree of January 19, 1918, sequestrating the interests of the defendants in the net proceeds of the sale ordered for partition, and conferring upon the lessees the right to establish in the main partition suit their claim for damages against the defendants for breach of the lease contract, was entirely beyond the scope of the pleadings in that case. The defendants, tenants in common with Tredway, whose committee had instituted the partition suit, filed no answer, for the evident reason that they had no defense thereto. It must be assumed that they were honestly in default as to the cause of action alleged, and had the right to expect that their candor would not be abused by injecting extraneous matter in the proceedings. The defendants Bowling and Lawrence in that issue set up no such claim in the answer which they alone filed. They assert the validity of their lease as to the entire interest in the property, and in the prayer for judgment insisted that the sale, if ordered for petition, be made subject to their rights as lessees of the whole property. There was not a suggestion in their answer that by the unauthorized act of Mangum they had not secured such a lease, or that they entertained any thought of requiring the tenants in common of the one-half interest to respond in damages for a breach of their undertaking. And, if they had intended and declared to make such a claim, their answer should have been served upon their codefendants against whom such a claim was being entertained. Their claim, which arose in spite of their answer, developed in the course of the trial, and had absolutely nothing to do with the cause of action for partition. The relations of and the reciprocal obligations between the lessees who contracted for the entire interest, and secured only a part, and the lessors who executed an unauthorized lease, were independent of—entirely disconnected from— the right of the plaintiff to partition. The claim of the

lessees for a breach of their contract was a legal claim, pure and simple, upon which, under ordinary conditions, the parties were entitled as a matter of right to a trial by jury; and, if the lessees have dragged into an equity case a legal demand which was entirely out of place there, they have no right to complaint that the Court applied to the trial of the issues arising thereon the method of trial by jury for such an issue. The petitioners have less ground for objecting to ordering a trial by jury upon the further ground that the Circuit Judge in directing a verdict withdrew the issues from the jury and decided the case as he would have done if the reference had been ordered.

3    There having been no appeal from Judge Shipp's decree, it is the law of the case, and nothing said above is intended to affect its integrity.

As to the second question:

4, 5    The witness was recalled by the petitioner in reply, after the defendants had closed. The testimony was in reference to the elements of damage which the petitioners had gone into in the evidence in chief. It was within the discretion of the trial Judge to allow or reject it, and no abuse of that discretion has been shown. The exception must be overruled upon the further ground that the record does not show what the testimony would have been.

As to the third question:

As has been seen, the Circuit Judge directed a verdict in favor of the defendants upon the ground that the evidence showed that the petitioners had been benefitted rather than damaged by the alleged breach of the lease contract. Considering the evidence in the light most favorable to the petitioners, we may assume that they leased from the defendant the entire interest in the warehouse; that it developed that the lessors had only a half interest in it; that the petitioners were deprived of the benefit of their lease for the last year of the stipulated term by the paramount

right of petition; that they were entitled to damages resulting from the breach of the lessors' implied engagement for quiet enjoyment for the term. The questions to be determined are: What is the measure of the lessee's damages? and what duties are required of the lessees under these circumstances?

"In every lease there is an express or implied engagement by the lessor that he has such title to the premises as enables him to give the lease, and that the lessee shall not be disturbed in his possession during the term by the lessor, nor by any paramount title." 3 *Sutherland, Damages* (4th Ed.), § 863, citing cases.

Upon a breach by the lessor of the engagement, resulting in a failure of the lessee to obtain possession, or of his eviction after obtaining possession, the lessee is entitled to recover as damages the value of his term or unoccupied portion thereof, as the case may be, and in addition thereto other damages sustained by him which may, as the proximate result of the breach, be deemed to have been within the contemplation of the parties. "The value of the term" means, of course, its value less the rent which the lessee would have been obliged to pay. 16 R. C. L., 770; *Snodgrass v. Reynolds,* 79 Ala., 452; 58 Am. Rep., 601; *Wolf v. Megantz,* 184 Mich., 452; 151 N. W., 622; Ann. Cas., 1916D, 1146. See, also, notes to 58 Am. Rep., 606; 53 Am. St. Rep., 117; 53 L. R. A., 100.

Ever since the decision of the case of *Fleury v. Thornhill,* 2 W. Bl., 1078, where it was held that, in the case of an executory contract for the sale of land, the vendee could recover only the amount of payments made with interest and costs, the effort has been made to apply the same rule to leases. The effort has succeeded in New York and Pennsylvania to a great extent, but in the majority of Courts the effort has failed, and the rule above stated has been laid down. See the case of *Snodgrass v. Reynolds,* 79 Ala., 452; 58 Am. Rep., 601, which contains an interesting dis-

cussion of the question. We are not advised of any case in this jurisdiction which has applied the rule in the *Fleury v. Thornhill* case to contracts similar to the one involved there, and, as even in England the Courts decline to apply it to actions by a lessee, we certainly may decline to apply it in both classes of cases, which would be necessary to sustain respondents' view.

There is abundant evidence of damages sustained by petitioners, both in reference to the value of the destroyed portion of their terms, and in reference to other items which may, in the opinion of a jury, have reasonably been within the contemplation of the parties. It was contended by the defendants that the petitioners were fully informed as to the defect in the title of the lessors, "that they took the chances" of being disturbed in their possession, and that the items of damage claimed were incurred with full knowledge, not only of the defect, but of the suit for partition. The motion for a directed verdict was not made upon these grounds, and these questions not passed upon in the Court below must necessarily be reserved.

The duty, of course, was involved upon the lessees to minimize their damages by securing another place of business, which they appear to have done with success. The only effect of this was to eliminate such damages as they might have suffered by being deprived of the opportunity of conducting their business.

The motion for a directed verdict was granted upon the sole ground that, as events transpired, the petitioners made more money that year in the new warehouse than they would have made in the old one, and that consequently they were benefited rather than injured by the breach of the lease contract.

This was an incorrect standard to apply. If their success in the new warehouse could be credited upon the claim against the lessors for damages, their losses could with equal propriety have been charged to the lessors;

no one would contend for such a doctrine. There was evidence tending to show that the petitioners could have handled the entire business which they conducted in the new warehouse during the year 1918 as conveniently and with as much profit in the old warehouse. It is clear, therefore, that the profits made in the new warehouse could not be set off against their claim for damages, and annihilate it, which was the theory upon which the motion was granted.

As to the fourth question:

The order was improvidently granted. The decree of Judge Shipp impounded the interests of the defendants in the proceeds of sale to await the determination of the issue of damages which was provided for and to be applied to them if established. There was no appeal from that decree. The petitioners were entitled to the security of that order. It was a concession to the defendants to allow them to substitute a bond for that fund, and that arrangement should not have been disturbed. The petitioners should not have been compelled to pay the expense of the concession allowed to the defendants, which was the effect of requiring them to give a bond for the premiums on the surety bond.

The judgment of this Court is that the order of Judge Shipp dated January 8, 1919, be affirmed, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial, and that the order of Judge Memminger, dated May 21, 1921, be reversed.