[Tyson v. Chestnut.]

# Tyson v. Chestnut.

|118  387|
|129  454|

*Action torecover Damages for Breach of the Covenants of a Lease.*

1. *Redemption from mortgage sale; payment or tender to guardian of minor sufficient.*—Where at a sale foreclosing a mortgage, the land is purchased by a minor, redemption under the statute (Code of 1886, §1881; Code of 1896, §3507), can be made by the payment or tender of the purchase money with 10 per cent. per annum thereon, and all lawful charges to the guardian of said minor; and upon such payment or tender to the guardian, the title is divested out of the ward and invested in the redemptioner.

2. *Redemption of lands under statute; when ratification of lease or atonement from tenant not shown.*—Where, after the purchase of lands at a sale foreclosing a mortgage thereon, the purchaser leases to another the lands for a term of years, separate notes for each year being taken for the rent, and shortly before the expiration of the first year, and while the lessee's crop was outstanding, the mortgagor redeems said lands under the statute, and then conveys them to a third person, the fact that such third person accepted from the lessor the rent note for that current year, but refused to accept the lease or either rent note for the remaining years, does not constitute a ratification of the lease or an election on the part of the vendee of the mortgagor to accept atonement from the tenant under the terms of the lease.

3. *Landlord and tenant; breach of covenant in lease for quiet enjoyment; when sufficiently shown.*—In an action by a lessee to recover damages for a breach of the covenant in the lease of quiet enjoyment where it is alleged in the complaint that the plaintiff was evicted from the premises under a title which was paramount to that of the defendant, in order to support such assignment of the breach it is not necessary to prove an actual, forcible eviction, but proof of demand of possession by persons holding a title paramount to that of the plaintiff's landlord, and that the plaintiff surrendered possession in obedience to such demand and in recognition of the dominant character of the title under which the demand was made, supports the allegations of the complaint and entitles the plaintiff to a recovery.

[Tyson v. Chestnut.]

4. *Justices of the peace; jurisdiction over defendant, when he appears and defends suit, although not regularly summoned.* Where a defendant in a suit before a justice of the peace has notice of the pendency of such suit, and appears and defends it, the jurisdiction of the justice over his person is complete, although he may not have been regularly served with a summons to answer the suit; and a judgment rendered against him in such suit is not void for want of jurisdiction of defendant.

5. *Same; same; admissibility of proceedings in action of unlawful detainer in a suit for breach of covenant of quiet enjoyment in lease.*—In an action by a tenant against his landlord to recover damages for breach of covenant of quiet enjoyment in a lease contract, where the breach complained of is the eviction of the lessee under a writ of restitution issued on a judgment recovered against him in an action of unlawful detainer, alleged to have been brought by the holder of a title to the leased premises paramount to that of the landlord, it is no objection to the introduction in evidence of the proceedings and judgment in the unlawful detainer suit, that it does not appear from the docket and papers before the justice that the defendant in such suit was served with a summons, if it is shown by the evidence in the pending suit for the breach, that the defendant had notice of the pendency of the suit before the justice, and appeared and defended it.

6. *Landlord and tenant; judgment in unlawful detainer suit binding on landlord when notified by tenant to defend.*—Where an action of unlawful detainer is brought against a tenant by a third person, and the tenant notifies his landlord of its pendency and requests him to appear and defend it, which he fails to do, the judgment rendered therein against the tenant is as binding against the landlord as if he had appeared, or had been originally a party.

7. *Same; same; admissibility of such judgment and the proceedings in action by tenant for breach of covenant of quiet enjoyment.*—In an action by a tenant against his landlord to recover damages for breach of covenant of quiet enjoyment contained in a lease contract, where the breach complained of is the eviction of the lessee under a writ of restitution issued on a judgment against him in an action of unlawful detainer, alleged to have been brought by the holder of a title to the leased premises paramount to that of the landlord, the proceedings in the unlawful detainer suit are admissible in evidence, although the landlord was not a party thereto, if it is shown that he was notified by the tenant of the pendency

[Tyson v. Chestnut.]

of said suit, and was requested by him to appear and defend it, which he refused or failed to do; and the judgment in the unlawful detainer suit is admissible as a part of the evidence of plaintiff's eviction as laid in the complaint, whether or not it shows that the right upon which it was rendered was paramount to plaintiff's right under the lease.

8. *Notary public and ex officio justice of the peace; jurisdiction of action for unlawful detainer.*—A notary public and *ex officio* justice of the peace has the same jurisdiction within his precinct of the action of unlawful detainer as a justice of the peace elected for such precinct would have.

9. *Evidence; when error without injury to admit incompetent evidence.*—Error in the admission of incompetent evidence is without injury when the same fact is proved by competent evidence, to which no objection was interposed.

10. *Action for breach of covenant for quiet enjoyment in lease; measure of damages.*—The measure of damages for the breach of a covenant of possession and enjoyment in a lease, where the rent has not been paid, is, the difference between the value of the leasehold at the time of the breach and the amount of the rent reserved covering the period of the non-enjoyment of the premises under the lease; and in an action to recover damages for such breach, evidence tending to show what is such difference is relevant and admissible.

11. *Evidence of current price of value of articles; postal cards from cotton factors containing price of cotton not admissible.*—A postal card sent out from time to time by cotton factors to their correspondents or customers, stating the price of cotton, are not "prices current or commercial lists printed at any commercial mart," within the meaning of the statute making such prices current or commercial lists presumptive evidence of the value of any article of merchandise specified therein, (Code of 1886, §2779; Code of 1896, §1810); and such postal cards are not admissible in evidence in proof of the price of cotton stated in them.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. E. W. PETTUS, Special Judge.

This was an action brought by the appellee, J. C. Chestnut, against the appellant, M. M. Tyson, to recover damages for the breach of a contract of lease, entered into by the plaintiff with the defendant, by which lease M. M. Tyson, as guardian of S. L. Tyson, rented to J. C. Chestnut a tract of land situated in Lowndes county, Alabama, known as the Ewing place, for four years,

to-wit, 1890, 1891, 1892, 1893; said Chestnut executing at the time of the lease his four notes for the annual rent. In this lease there was the following stipulation: "The said M. M. Tyson guarantees to said Chestnut a peaceful and legal possession of the place above mentioned for the time specified."

The complaint contained but one count, in which is set out the two breaches of the covenants of the contract of lease counted upon, in which it is averred that the plaintiff, while in the posession of the property rented from the defendant, was evicted from said premises by S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut, under a title which was paramount to that of the defendant and in existence before and at the time of making said contract. These breaches of the contract of lease, as alleged in the complaint, are copied at length in the opinion. The defendant interposed a demurrer to the complaint, upon the ground that it failed to state that the title which was alleged to be in S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut was a lawful title. This demurrer was overruled. The defendant then filed the plea of the general issue and a special plea, in which she averred that at the time of the alleged eviction the plaintiff was a tenant of the said S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut. To this plea the plaintiff demurred upon the following grounds: 1. Because it presents an immaterial issue. 2. For that the plaintiff may have been a tenant of S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut at the time of his alleged eviction, and yet have been evicted by a title paramount to the title derived by him from the defendant. 3. Said plea fails to deny that the title of S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut was paramount to the title derived by the plaintiff from the defendant, and fails to deny that said title was in existence before and at the time of the contract of lease sued on. This demurrer was sustained. The defendant then filed another special plea, in which she averred that after the making of said lease and prior to the eviction alleged in said complaint, the said S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut demanded of the defendant the note for the

first instalment of rent due under said lease, and thereupon the defendant delivered up said note to said Chestnuts; that thereafter and before the said alleged eviction, the said S. J., N. F., E. B. and J. T. Chestnut demanded the amount due on said note from J. C. Chestnut, who paid the sum to them as and for the agreed rent. Wherefore, this defendant says that said S. J., N. F., E. B. and J. T. Chestnut became bound by the terms of said lease, and said plaintiff became and was entitled to hold and enjoy said lands under the terms of said lease for the full term thereof as the tenant of the said S. J., N. F., E. B. and J. T. Chestnut, and that the title of the said S. J., N. F., E. B. and J. T. Chestnut was not paramount at the time of the said alleged eviction.

Plaintiff demurred to this plea, assigning the same grounds as were interposed to plea No. 2, and upon the further ground that said plea failed to aver that the plaintiff became the tenant of said S. J., N. F., E. B. and J. T. Chestnut, under the contract of lease sued upon. The court sustained this demurrer. Thereupon the defendant amended the last mentioned special plea by adding the averment, that "said J. C. Chestnut, attorned to the said S. J., N. F., E. B. and J. T. Chestnut, as tenant under said lease."

The plaintiff demurred to the plea as thus amended, assigning the same grounds which had been interposed to said plea before amendment, and the following additional grounds: 1. Said plea, as amended, fails to aver that said contract of lease sued on was ever transferred, signed or delivered by defendant to S. J., N. F., E. B. and J. T. Chestnut. 2. Said plea fails to aver that the three other notes described in said lease sued on were ever transferred or assigned by the defendant to said S. J., N. F., E. B. or J. T. Chestnut. 3. Said plea fails to deny that the defendant was notified by the plaintiff to defend the unlawful detainer suit set forth in the second breach assigned in plaintiff's complaint, and fails to deny that after such notification judgment was rendered against plaintiff in said suit. These demurrers to the plea as amended were·overruled, and issue was joined thereon.

The plaintiff introduced documentary evidence showing that on December 4, 1888, the defendant Mrs. M. M.

Tyson, as guardian of S. L. Tyson, a minor, was the holder and owner of a note executed by E. W. Ewing and J. T. Dickson, for the sum of $4,488.75, and of a mortgage executed by the said Ewing and Dickson and their respective wives, securing said note; that said mortgage was upon a certain tract of land situated in Lowndes county, Alabama, known as the Ewing place, which is described in the complaint. That upon the default in payment of said debt, M. M. Tyson, as said guardian, by bill in chancery, foreclosed said mortgage, and at the foreclosure sale M. M. Tyson, for and in the name of said S. L. Tyson, her ward, became the purchaser thereof, and on April 15, 1889, the register in chancery executed and delivered to said S. L. Tyson a deed of conveyance to said land; that said sale was afterwards, to-wit, on July 22, 1889, reported by the register and confirmed.

It was admitted on the trial of this cause, that the proceedings in said foreclosure sale were regular, and that the legal title was, thereby, divested out of said Ewing and Dickson, as mortgagees, and invested in said S. L. Tyson, by virtue of said deed from the register, subject, however, to the statutory right of said Ewing and Dickson, or either of them, to redeem said lands. It was also admitted that the legal title to said lands was in the mortgagors up to the time of the foreclosure sale.

The plaintiff offered in evidence the lease counted upon, which was executed by said M. M. Tyson to plaintiff, on November 9, 1889. The proof showed, without conflict, that the lands described and referred to in the lease offered in evidence, were the same lands referred to and described in an unlawful detainer suit before one Harbin, notary public and *ex officio* justice of the peace, and in the chancery proceedings for the foreclosure of the Ewing and Dickson mortgages, and in the various deeds offered in evidence. The plaintiff also introduced in evidence a deed from J. T. Dickson and wife to E. W. Ewing to said lands, bearing date February 7, 1889, by which deed Dickson conveyed to Ewing his entire, undivided one-half interest in said lands. The plaintiff then introduced in evidence a deed from M. M. Tyson, guardian of S. L. Tyson, to E. W.

[Tyson v. Chestnut.]

Ewing, bearing date September 8, 1890, which deed recited the fact that said Ewing had complied with all the requirements for the redemption of said lands which had been sold in the foreclosure suit, and had paid the amount due under said suit, and conveyed to said Ewing "all the right, title and interest of said S. L. Tyson and of myself, as such guardian, and otherwise, in and to" the said lands. It was shown by the evidence that the money mentioned in said deed as the consideration thereof, was paid to M. M. Tyson, as therein recited, and that at the time said money was paid to her she was guardian of said S. L. Tyson, and it was paid to her as such guardian for the redemption of the lands described therein, which had been sold under the decree of foreclosure.

There was then introduced in evidence a deed from said E. W. Ewing to E. B. Chestnut, J. T. Chestnut, N. F. Chestnut and S. J. Chestnut, bearing date September 8th, 1890, in which said Ewing conveyed to the grantees all of his right, title and interest in said lands.

It was further shown by the evidence that at the time of the execution of the deed from Dickson to Ewing and of Ewing to E. B. Chestnut and others, and of the deed from M. M. Tyson to E. W. Ewing, the plaintiff was in possession of said lands, holding the same under the lease from M. M. Tyson heretofore referred to.

The plaintiff then introduced one Harbin, who was a notary public and *ex officio* justice of the peace in January, 1891, in Brooks beat, Lowndes county, Alabama, and handed to said Harbin certain papers purporting to be a copy of the docket and proceedings in an action of unlawful detainer tried before him in which E. B. Chestnut, W. F. Chestnut, J. T. Chestnut and S. J. Chustnut were plaintiffs, and said J. C. Chestnut, plaintiff in this cause, was defendant. Said witness Harbin testified that the original papers in said unlawful detainer suit and his court docket had been destroyed by fire while he was holding said office of notary public and *ex officio* justice of the peace, but that he had made the copies of said proceedings and docket entries and endorsements thereon from the original papers and docket, and knew the same to be correct copies. The plaintiff then offered the said copies of said papers and

docket entries, with the endorsements thereon, in evidence. These papers and the endorsements thereon were, in all respects, regular, and it was shown that said lands were situated in the beat of the county wherein Harbin was notary public and *ex officio* justice of the peace. The defendant objected to the introduction in evidence of the copies of the proceedings in the unlawful detainer suit, upon the following grounds: 1. That the defendant in this suit, M. M. Tyson, was not a party to said judgment. 2. That said judgment in the unlawful detainer suit was not any evidence that the plaintiffs therein asserted or claimed a paramount title to the lands set forth in the complaint. 3. That said judgment is conclusive that the relation of landlord and tenant existed between the plaintiffs and the defendant in that suit. 4. That the court in which said suit was tried is not shown to have had jurisdiction of said cause, in that it does not appear that any notice of said suit was issued to the defendant therein. 5. Said court is shown not to have had jurisdiction of said suit, because Harbin, the person before whom said cause was tried, was a notary public and *ex officio* justice of the peace, and not a justice of the peace. The court overruled each of said objections, permitted said papers to be introduced in evidence, and to each of these rulings the defendant duly excepted. Among the papers introduced was a writ of restitution which was issued by the said notary public and *ex officio* justice of the peace, after the recovery of the judgment by the plaintiffs against the defendant therein, and upon this writ of restitution was the following indorsement, signed by the sheriff: "Executed by putting E. B. Chestnut into possession of the within described lands, and collecting the costs." The defendant separately objected to the introduction in evidence of this writ and the indorsement thereon, upon the grounds, (1), that the signature of the sheriff was not proved, and, (2), that it was not proved that the sheriff had signed the original of said return. The court overruled this objection, and the defendant duly excepted.

There was no evidence other than said transcript from the justice's court that any notice requiring the defendant therein to answer in said unlawful detainer

suit was ever issued, served or returned; but it was shown by said transcript that the defendant was present at the trial and defended the suit, interposing the general issue.

The plaintiff in the present suit, as a witness in his own behalf, and another witness introduced by the defendant, testified that he went to the home of the defendant, Mrs. M. M. Tyson, and notified her of the pendency of the unlawful detainer suit, and that he had been served with notice of its institution, and that he said to her, that she had, in said lease to him, guaranteed the peaceful and legal possession of said premises during the time therein specified, and requested her to defend said suit; that this notice was given before the trial of the unlawful detainer suit; but that Mrs. M. M. Tyson did not appear and defend said suit. The plaintiff further testified as a witness, that on January 23, 1891, he was evicted from said lands by the sheriff of Lowndes county, under a writ of restitution, which had been issued on the judgment rendered for said lands in the unlawful detainer suit; and that E. B. Chestnut, N. F. Chestnut, J. T. and S. J. Chestnut were, under said writ, put in possession of the said lands. This witness further testified that at the time of his eviction, the market value of the lease of the rented premises was $1,000 or $1,200 over and above the rent he had agreed in the lease to pay therefor. The defendant objected to the question eliciting this testimony, and moved to exclude the testimony, upon the following grounds: 1st. No such damages were claimed in the complaint 2d. That the true measure of damages was the difference between the rents reserved for said years and the value of the lease at the date of its execution. 3d. That the plaintiff was entitled to recover only nominal damages, in that the rent had not been paid for the last three years of the term of the lease. These objections and the motion were overruled, and the defendant duly excepted. Other witnesses for the plaintiff were, against the objection and exception of the defendant, permitted to testify as to the value of the lease at the time of eviction. There was also evidence introduced on the part of the plaintiff that at the time the rent was made payable, during each of the three remaining years,

the value of the cotton was from 8 to 10 cents per pound.
. Several witnesses introduced by the defendant testi-
fied that at the date of the eviction of the plaintiff, the
value of the lease did not exceed the rent agreed to be
paid; while other witnesses testified that the value of
said lease was in excess of the rent about one or two
bales of cotton per annum.

It was shown by the defendant, Mrs. Tyson, without
conflict, that after the date of said deed from the de-
fendant, Mrs. Tyson, to E. W. Ewing, and the deed from
F. W. Ewing to E. B. Chestnut and others, and prior
to October 1st, 1890, said E. B. Chestnut acting for him-
self and his co-grantees, received of Joseph Norwood, as
agent of Mrs. M. M. Tyson, the note which the plaintiff
J. C. Chestnut had executed to Mrs. Tyson under said
lease for the rent for the year 1890, and said Norwood
turned over to said E. B. Chestnut said note, and that
at the same time said Norwood, as agent for defendant,
offered to deliver to said E. B. Chestnut the other notes
given by plaintiff for rent under the lease sued on and
the lease itself, but the said E. B. Chestnut then refused
to receive the lease or the other notes; that afterwards
and prior to commencement of said suit in unlawful de-
tainer, said J. C. Chestnut paid the amount of said note
to said E. B. Chestnut, who thereupon surrendered the
same to him, said J. C. Chestnut. At the date of the
said payment, J. C. Chestnut was holding under said
lease and knew that the said E. B. Chestnut and his co-
grantees were claiming the title to the lands through
Mrs. Tyson, as aforesaid, by their deed from E. W.
Ewing. J. C. Chestnut, plaintiff, testified that there
was no agreement between himself and his four broth-
ers, E. B. Chestnut, N. F. Chestnut, J. T. Chestnut and
S. J. Chestnut, that he, J. C. Chestnut, should continue
to occupy the land under said lease. It was shown that
at the time of the delivery of the note of 1890, as afore-
said, Joseph Norwood offered to turn over to said E. B.
Chestnut and his co-grantees, the rent notes for the
years 1891, 1892 and 1893, and said E. B. Chestnut re-
fused to accept the same.

One McWhorter, a witness for the defendant, testified
that he was a dealer in cotton in the town of Hayne-
ville; that from time to time Lehman, Durr & Co., cot-

ton factors, sent to him postal cards, on the back of which were printed the price of cotton in Montgomery, Alabama, and New York. Certain of these cards were received by said witness during the years 1892 and 1893, and were offered in evidence by the defendant, in so far as they purported to show the price of cotton in Montgomery, Alabama; but on motion of the plaintiff the court excluded such cards, and refused to allow them to be introduced. To this ruling the defendant duly excepted.

Upon the introduction of all the evidence, the court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "The court charges the jury that if they believe the evidence, they should find for the plaintiff." (2.) "The plaintiff is entitled to recover, if you believe the evidence, and the amount of his recovery should be the damages he has sustained by reason of his eviction, with interest thereon from the time of his eviction." To the giving of each of these charges the defendant separately excepted, and also separately excepted to the court's refusal to give each of the following charges requested by her: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe the evidence, the plaintiff is not entitled to recover under the first breach assigned." (3.) "If the jury believe the evidence, the plaintiff is not entitled to recover more than nominal damages." (5.) "The judgment rendered in the action of unlawful detainer was not binding on Mrs. Tyson." (6.) "The damages the plaintiff is entitled to recover, if any, is the difference in the rent agreed to be paid, and the value of the lease at the time it was made." (7.) "If the jury believe from the evidence that J. C. Chestnut never paid the rent which he agreed to pay Mrs. Tyson for the years 1891, 1892 and 1893, then the plaintiff can not recover more than nominal damages." (8.) "If the jury believe the evidence, the plaintiff is not entitled to recover under the second breach assigned." (9.) "The court charges the jury that the title to the lands at the time of the lease was vested in S. L. Tyson." (10.) "That the title of the land at the time of the alleged ouster was in S. L. Tyson." (11.) "That there was not, at the time of the execution of the lease, nor

[Tyson v. Chestnut.]

at any time thereafter, before the commencing of this suit, any such title in the Chestnuts as was paramount to the lease." ·

There were verdict and judgment for the plaintiff, assessing his damages at $871.54. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

J. M. CHILTON and LOMAX & LIGON, for appellant. The Chestnuts acquired no interest whatever in the property by virtue of Ewing's deed to them. Ewing then had, as his deed shows, only the statutory right of redemption—a right which this court has declared to be neither property nor a right of property, but a mere personal privilege the essential nature of which is that it is confined to the person or the party within whose option its exercise rests.—*Commercial Real Estate & Building Asso. v. Parker*, 84 Ala. 298, and cases there cited.

The Chestnuts took nothing under this deed, for the reason that the interest attempted to be conveyed—that is, the statutory right of redemption—was not susceptible of being conveyed. The deed, therefore, was void, and shows on its face that it was void.

We fully recognize the principle that where one conveys property to which he has no title, and incorporates in his conveyance covenants of warranty, or words which under our statute have a like effect, and afterwards acquires title, the subsequently acquired title will pass *eo instanti* to the original grantee. Such, we concede, would have been the effect of Mrs. Tyson's deed to Ewing, except for the fact that Ewing professes to convey a *special*, as distinguished from a general, interest, viz., the statutory right of redemption. His deed in respect to that interest being void, the subsequently acquired title of Ewing did not pass by estoppel.

In 3 Washburn on Real Property, p. 106, §33, in considering titles by estoppel, it is said, there are a few exceptions to the effect given to recitals in deeds, one of which is found in the case where the deed containing the recital is, upon its face, a void one. There it does not work an estoppel.—*Sinclair v. Jackson*, 8 Cowan, 543; *Wallace v. Miner*, 6 Ohio, 366; *Concord Bank v. Bellis*, 10 Cush. 276; *Lowell v. Daniels*, 2 Gray. 161;

*Cuthbertson v. Irving,* 4 H. & N. 754; Bigelow on Estoppel, 350; *Tait v. Frow,* 8 Ala. 543.

It is clear from our decisions that, unaffected by the statute of February 27, 1889 (Acts of 1888-9, p. 764), Ewing acquired no right to exercise the statutory right of redemption by virtue of the conveyance of his (Dickson's) equity of redemption to him (Ewing).—*Powers v. Andrews,* 84 Ala. 289. The mortgage was executed prior to said statute and was, therefore, unaffected by it.—*Lehman v. Moore,* 84 Ala. 196.

The acceptance by E. C. Chestnut and his co-purchasers of the first rent note given by the plaintiff in this action and the collection of that note from the plaintiff as tenant, was a clear adoption as matter of law, of the entire lease. If these parties did not intend to adopt the lease, they should claim no right under it. Having claimed a right and exercised it by collecting the rent note for the first year, they absolutely ratified the lease as matter of law.—Bigelow on Estoppel, pp. 642, 666; *Butler v. O'Brien,* 5 Ala. 316; *Hatchett v. Blanton,* 72 Ala. 423. If the question is one of intention, it was a question peculiarly for the jury, and the court erred in withdrawing it from the jury, as it did when it gave the affirmative charge in favor of the plaintiff. "Whenever it is necessary from the evidence to deduce the intention of the parties, a general charge as to the effect of the evidence ought not to be given." 3 Brick. Dig. 110, §§53, 55; *Cox v. Knight,* 49 Ala. 173; *Smith v. Collins,* 94 Ala. 394.

GAMBLE & POWELL, *contra.*—The trial court did not err in overruling the defendant's demurrer to the whole complaint.—*Tyson v. Chestnut,* 105 Ala. 149.

The proceedings in the unlawful detainer case were binding on Mrs. Tyson because the undisputed testimony shows she was notified of the institution of the suit, the time and place of trial, and requested to defend it. The court below, under the proof, properly admitted the proceedings in the unlawful detainer suit. *Tyson v. Chestnut,* 105 Ala. 149. The writ of restitution was a part of the proceedings in the unlawful detainer suit. It had been destroyed. A certified copy of it and the other papers were admissible in evidence,

when the notary public and *ex officio* justice of the peace was in court and testified to their correctness, especially when Chestnut testified, that he was put out of possession by the sheriff of Lowndes county under the writ of restitution. The judgment in the unlawful detainer suit was also admissible under section 3319 of the Code.

It was competent for the witness Chestnut to testify that at the time of the alleged eviction the market value of the rented premises was one thousand to twelve hundred dollars, over and above the rent he had agreed to pay therefor.—*Snodgrass v. Reynolds,* 79 Ala. 452.

The redemption of the land by Ewing from Mrs. M. M. Tyson, the defendant in this case, was a valid redemption. She was the guardian of S. L. Tyson, the minor who had purchased the land at the foreclosure sale; and the payment or tender as provided in the statute, to the guardian, was a sufficient exercise of the statutory right of redemption.—Code of 1886, §1881; *Lehman v. Moore,* 93 Ala. 186; *Gardner v. Lanford,* 86 Ala. 508.

McCLELLAN, J.—We entertain no doubt that the redemption of the land of which the plaintiff, Chestnut, was lessee from S. L. Tyson, a minor, who purchased at the sale foreclosing the mortgage, was efficaciously effected by the payment of the purchase money, with ten per cent. per annum thereon, and all other lawful charges to Mrs. M. M. Tyson, the guardian of his estate and person. The statutory provision is this: "The debtor must also pay or tender to the purchaser or his vendee the purchase money, with ten per cent per annum thereon, and all other lawful charges; and such payment or tender has the effect to reinvest him with the title; and if a conveyance has been made to the purchaser, he must, at the cost of the debtor, convey to him such title as he acquired by the purchase."—Code of 1886, §1881; Code of 1896, §3507. The statute is not to be so narrowly construed in respect of the person making or the person to whom tender and payment is to be made as to require the tender to be made by a debtor or to a purchaser who is *non sui juris,* and incapable of making or receiving a binding payment, or failing

[Tyson v. Chestnut.]

that, to force a proceeding in chancery to effectuate redemption, when the incapacitated party is under guardainship. In *Barringer v. Burke,* 21 Ala 765, it was ruled that when lands sold under execution are purchased and held by a trustee of a *feme covert* in trust for her, an offer by a judgment creditor to redeem under the statute is *sufficient,* if made to the trustee. It would seem that the inclination of the court was that a tender to the *cestui que trust* would also have been sufficient; but a decision to that effect was not necessary to the case, and was expressly pretermitted. But in *Couthway v. Berghaus,* 25 Ala. 393, it was expressly held that where the legal title is in a non-resident naked trustee and the *cestui que trust* has control of the title and is in possession and in the perception of the rents and profits, tender may be made to the latter. So it is safe to say that a tender or payment may be good though not made to the holder of the legal title, the "purchaser" at the sale sought to be redeemed from. On the other hand, it is held that such tender and payment when the debtor is under disability need not be made by him, but is well made by his guardian.—*Marvin v. Schilling,* 12 Mich. 356; *Pardee v. Van Ahken,* 3 Barb. (N. Y.) 534.

These several cases illustrate the liberality of construction to be applied to the statute in respect of the persons to or by whom tender and payment may be made. It is certainly no extension of this liberality, if indeed an invocation of it is needed to justify the proposition, to declare that a tender or payment is well made by a person authorized generally to pay money for the debtor, and to a person in like manner authorized to receive money which the purchaser is entitled to or under a duty to receive. If the purchaser has a general agent, we apprehend that tender of payment under the statute made to such agent would be good; and *a fortiori* when the purchaser is under such disability that no valid payments can be made to him, and has a guardian whose duty and exclusive right it is to receive all funds belonging or coming to his ward or which another has a right to pay to his ward. It was surely not the intent of the lawmakers to leave redemption from purchasers who are *non sui juris* unprovided for; but that

would be the effect of holding that the statute does not in such cases authorize redemption through the guardians of such persons, for it is not perceived how a resort to chancery, as suggested by counsel, could help the matter. All that such court could do obviously would be to decree that the tender be made to the guardian and payment be accepted by him, and this only upon the assumption that the statute authorizes such tender and payment; and if it does there is no occasion for any decree to that effect. The fact that the title is in the minor is of no consequence in this connection on the assumption just stated. If payment may be made to the guardian, and is made, the title is by the statute itself divested out of the ward and invested in the redemptioner; and to the latter's complete rehabilitation in that respect neither a conveyance by the ward, nor a conveyance by the guardian, nor yet a decree of chancery is at all necessary. And so, to repeat, we are entirely satisfied there was a perfected redemption of the land by Ewing from S. L. Tyson the moment the former paid the purchase money, with ten per cent per annum thereon, and all other lawful charges, to Mrs. M. M. Tyson as the guardian of said S. L. Tyson.

This title, thus passed into Ewing and by conveyance from him into E. B., J. T., N. F., and S. J. Chestnut, was a lawful title, it existed by relation before and at the time of the lease from Mrs. Tyson to the plaintiff, and it was paramount to the title conveyed by that lease. From and after the time this title became vested in said Chestnuts they were entitled to the possession of the land as against the lessee in said lease, and to evict him therefrom in recovering the posssession. They, however, had an election to accept attornment by him and to allow him to continue to hold the land for the period and upon the terms of the lease. It is contended for appellant that they in fact adopted this latter course, and that consequently there has been no eviction of the plaintiff as lessee. This theory is based solely on the fact that the Chestnuts received from Mrs. Tyson the note executed by the plaintiff for the rent of the first year under the lease, and collected it from the lessee. The lease covered the years 1890, 1891, 1892 and 1893, possession under it being taken by plaintiff

[Tyson v. Chestnut.]

January, 1890. The rent obligation for each year was due and payable on the 1st day of October. The redemption was made September 8th, 1890. Some time between this date and October 1st ensuing the obligation for the rent of 1890 was delivered to the Chestnuts. At the same time Mrs. Tyson offered to deliver to them the other rent notes and the lease itself; but they refused to receive the lease or the other notes. It is manifest upon these facts that they did not *intend* by receiving the note about to mature and accepting payment of it from the plaintiff to ratify the lease to him and to accept attornment by him under its terms; and this is further shown by the fact that they proceeded promptly to notify him that his possessory right had terminated, to demand possession of him, and, he failing to yield upon such demand, to bring their action of unlawful detainer against him. We are not at all inclined to hold them to a ratification and adoption of the lease upon the fact of their receiving and collecting the note for the rent of the year which was about spent at the time, and in the face of their obvious intention to the contrary. We give to that fact no other effect than this: The year being far advanced at the time of redemption, and crops being outstanding on the land, the lessee was entitled to them as emblements, and the redemptioners were entitled correlatively to the rent covering the period of occupation in the production and harvesting of the crops and maturing after redemption. And the receipt and collection by the Chestnuts of the note was no more than a recognition of the plaintiff's undoubted right to the emblements, and their assertion of the consequent and dependent right to the current rent. The fact thus confined in its operation, involves nothing of ratification or continuance of the lease. *Gardner v. Lanford*, 86 Ala. 508.

These views will also serve to indicate the grounds of our conclusion that the special pleas filed by the defendant were bad, and properly so held by the trial judge on demurrers, in their original forms and until an amendment, to the effect that the plaintiff attorned to said Chestnuts as tenant under the lease.

We are, therefore, to consider the question of eviction unencumbered by the suggestion of adoption of the

lease by the Chestnuts. The complaint, after setting out the lease, avers the breach of its covenant for quiet enjoyment in two assignments, as follows:

"(1.) In and by the terms of said agreement, the defendant guaranteed to the plaintiff the peaceful and legal possession of the property therein described for the time therein specified under said agreement, plaintiff went into possession of the said rented premises and remained in possession and occupancy of the same until, to-wit, the 23d day of January, 1891, when he was evicted from said premises under the title of S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut, which said title was paramount to the title of defendant, and in existence before and at the time of making said agreement above set forth.

"(2.) In and by the terms of said agreement the defendant guaranteed the plaintiff the peaceful and legal posssssion of the premises therein described for the time therein specified. Plaintiff under said agreement went into possession of said land and remained on said rented premises until, to-wit, January 23d, 1891, when he was evicted from the same by the sheriff of Lowndes county, Alabama, under a writ of restitution, issued on a judgment rendered in the justice's court of Brooks Beat, Lowndes county, Alabama, which said court had jurisdiction, against this plaintiff, in an action of unlawful detainer, wherein S. J. Chestnut, N. F. Chestnut, E. B. Chestnut and J. T. Chestnut were plaintiffs and this plaintiff was defendant. After the commencement of said unlawful detainer suit against this plaintiff, he notified the defendant of its pending, and requested her to defend the same; she failed to do so; judgment was rendered against [this] plaintiff in said cause, and he was evicted from said rented premises above set forth. Said judgment was obtained and said eviction was had under a title which was paramount to the title of the defendant, and in existence before and at the time of the execution of said agreement, all to the great damage," &c., &c., of the plaintiff.

With the suggestion that the Chestnuts should be held to have adopted the lease and accepted attornment by plaintiff under it eliminated from the case, the evidence adduced on the trial without conflict supported

the averments of each of the foregoing assignments of a breach of the covenant for peaceful and legal possession. To support the first assignment it was not at all necessary for the plaintiff to prove an actual forcible eviction. Showing a demand for possession by the Chestnuts claiming under a title which, as we have seen, was paramount, it was only necessary for him to show further that he yielded and surrendered possession in obedience to such demand and in recognition of the dominant character of the title under which the demand was made. All this appears in the case without reference to the proceedings in unlawful detainer; or, at least, with those proceedings considered as regular and valid out of the case, the evidence would be still affirmative and free from conflict in support of the first assignment of breach of the covenant; and as to that assignment the plaintiff was entitled to the general charge.

Under the second count, it was of course necessary for the plaintiff to prove the eviction as therein alleged, that is by the sheriff under a writ of restitution issued on the judgment for plaintiffs in the action of unlawful detainer against this plaintiff. And the evidence adduced is similarly full and without conflict in proving the eviction as laid in this assignment. But it is insisted that the court erred in several particulars in receiving this evidence against the objection of the defendant. So far as these objections proceed on the idea that the judgment rendered by the justice of the peace was void for want of jurisdiction of the defendant's person, they are patently without merit. It is true that it does not appear by the docket and papers before the justice that the defendant was served with a summons to answer in that suit; but it is shown by evidence adduced without objection that he *had notice* of the suit more than six days before the day set for trial, and the judgment itself shows that he appeared in person at the trial and defended the action, pleading "not guilty" in bar thereof.

The objection to evidence of the unlawful detainer suit based on the ground that Mrs. Tyson, the present defendant, was not a party thereto, is equally untenable. The uncontroverted evidence showing that the de-

[Tyson v. Chestnut.]

fendant in that suit notified her of its pendency and to appear therein and defend against it, the judgment was as binding upon her as if she had appeared or had been originally a party.—*Chestnut v. Tyson,* 105 Ala. 149, s. c. 53 Am. St. Rep. 101, and notes.

The judgment is a part of the evidence of plaintiff's eviction as laid in the complaint, and whether it shows that the right upon which it was rendered was paramount to plaintiff's right under the lease was immaterial as affecting its admissibility. The eviction shown by the unlawful detainer proceeding, that it was under title paramount might well be proved *aliundi.*

What we have said in respect of the suggestion that the Chestnuts had ratified the lease will suffice to indicate the ground of our conclusion that the judgment in the unlawful detainer suit does not show that the relation of landlord and tenant existed between the parties to that suit, nor that "there could not have been an eviction under title paramount in that suit." These grounds of objection are untenable.

Harbin, the notary public and *ex officio* justice of the peace, had the same jurisdiction of the unlawful detainer action as a justice of the peace elected for the precinct would have had.

So far as the objections take had relation to the return purporting to have been indorsed on the writ of restitution by the sheriff, we need not pass upon it. If that indorsement was improperly admitted, it was error without injury to the defendant, since the fact that plaintiff was evicted by said sheriff under a writ of restitution issued on the judgment in the unlawful detainer action was proved by other evidence to which no objection was made, and the truth of which was not at all challenged or controverted in the case.

The foregoing will suffice to dispose of all exceptions taken by the defendant below to rulings bearing upon the right of plaintiffs to recover upon each averment of breach of the covenant; and it only remains to consider those rulings which have relation to the *amount* of the recovery, and to which exceptions were reserved.

The measure of damages for the breach of a covenant for possession and enjoyment in a lease, where the rent has not been paid, is the difference between the value of

the leasehold at the time of the breach and the amount of the rents reserved covering the period of non-enjoyment of the premises under the lease. We regard this as too well settled by our own and the authorities generally, as well as too obviously just upon principle to require any discussion at our hands.—*Snodgrass v. Reynolds*, 79 Ala. 452, and citations; *Chestnut v. Tyson*, 105 Ala. 149, (and notes to) s. c. 53 Am. St. Rep. 116 *ct seq.*

The testimony of the plaintiff, that "at the time of the eviction the market value of the rented premises was $1,000 or $1,200 over and above the rent he had agreed to pay in the lease therefor," was not subject to any of the objections interposed to it. Such value is claimed in the complaint; the measure of damages was *not* the difference between the rent reserved and the value of the lease *at its date*, and the fact that the rent reserved for the period after eviction had not been paid did not restrict the recovery to nominal damages.

Postal cards sent out from time to time by cotton factors to their correspondents or customers stating the price of cotton are not "prices current or commercial lists printed at a commercial mart," within section 2779 of the Code of 1886, (Code of 1896, §1810), and are not admissible in proof of the prices stated in them. The court properly excluded the cards offered in evidence by defendant purporting to have been sent to McWhorter by Lehman, Durr & Co.

The rulings of the trial court on requests for instructions bearing upon the measure of damages were in conformity to the rule as we understand and have declared it.

The charge requested by the defendant, to the effect that at the time of the lease the title to the land was in S. L. Tyson, could, had it been given, have served no other end in the case than to mislead and confuse the jury. While the legal title was then in S. L. Tyson, for the purposes of this case it was potentially in the Chestnuts, as the redemption by Ewing and his conveyance to the Chestnuts carried the title thus in them back by relation to and before the time of lease made.

The charge requested to the effect that at the time of the eviction the legal title was in S. L. Tyson was

asked on the theory, which we have held to be unsound, that redemption from S. L. Tyson was not effected.

We find no error in the record, and the judgment of the circuit court must be affirmed.

Affirmed.