[No. 11513.  Department One.  December 31, 1913.]

JAMES OLDFIELD, *Respondent*, v. ANGELES BREWING &
MALTING COMPANY, *Appellant*.[1]

LANDLORD AND TENANT—CONTRACT TO LEASE—BREACH—MEASURE OF
DAMAGES.  Upon breach of a contract to lease by refusing to accept
the building, the action is entire, and the owner's measure of dam-
ages is his loss, if any, by reason of the difference between the entire
rent reserved and the entire rental value for the term at the time
of the breach.

SAME—BREACH—DAMAGES—EVIDENCE—ADMISSIBILITY.  In an ac-
tion for breach of a contract to enter into a lease, which provided
that the lessee should not engage in any unlawful business, the fact
may be shown that the building was within 300 feet of an armory,
and therefore could not be leased for saloon purposes, under Rem.
& Bal. Code, § 7229.

SAME—DAMAGES — EVIDENCE — ADMISSIBILITY.  In an action for
breach of a contract to lease a building for a term of years, by re-
fusing to accept the building, plaintiff cannot show the rental value
at the time of the breach by showing that the rental value had de-
creased from year to year.

CORPORATIONS—WRITTEN CONTRACTS—AUTHORITY OF OFFICERS.  A
lease executed by the president and secretary of a corporation but
not attested by the corporate seal, is not admissible without proof
of their authority, express or implied, or ratification by the corpora-
tion, where their authority was denied.

APPEAL—DECISION—LAW OF CASE.  A decision on a former ap-
peal that an instrument was the "bounden contract" of the appellant,
on which an action for its breach would lie, is conclusive on a sub-
sequent appeal that the contract was not void on its face.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—PLEADINGS—AMEND-
MENT.  An amendment of a complaint so as to present issuable facts,
as directed by the supreme court upon a former appeal, does not de-
prive the defendant of property without due process of law.

APPEAL—DECISION ON PRIOR APPEAL—LAW OF CASE.  A decision on
a former appeal becomes the law of the case upon a subsequent ap-
peal.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered July 12, 1913, upon the ver-

[1]Reported in 137 Pac. 469.

dict of a jury rendered in favor of the plaintiff, in an action for breach of contract. Reversed.

*Willett & Oleson,* for appellant.

*Charles F. Munday, Walter S. Fulton,* and *R. L. Blewett,* for respondent.

GOSE, J.—This is an action for damages flowing from an alleged breach of a lease. There was a verdict and judgment in favor of the plaintiff. The defendant has appealed. This is the third appeal. See *Oldfield v. Angeles Brewing & Malting Co.,* 62 Wash. 260, 113 Pac. 630, Ann. Cas. 1912C, 1050, 35 L. R. A. (N. S.) 426; and *Id.,* 72 Wash. 168, 129 Pac. 1098. A history of the litigation may be found in these cases. On September 24, 1908, the respondent agreed to erect a building upon certain described property in the city of Seattle, and to lease it to the appellant for the term of five years, commencing upon the day of the completion of the building, at a monthly rental of $350, payable in advance. The appellant refused to accept the lease. In the first suit, the respondent sought to recover the rental stipulated in the lease up to the time of commencing his action. Upon the first appeal, we held that the measure of damages flowing from the appellant's repudiation of the lease was the difference between the rent reserved for the term and the reasonable rental value of the premises during the same period, saying: "There is but one breach, and there should be but one recovery for that breach;" and that, when the appellant refused to take possession of the building and pay rent, a cause of action, "immediately arose, and the measure of damages was not the rent reserved in the contract, as held by the trial court, but the difference between that sum and the rental value of the premises for the five years fixed in the agreement."

On the second appeal, we again said that there was "but one breach, and that was complete and final, going to the whole contract. It was made by the refusal to accept the building. In such a case, the cause of action is entire, and

the measure of damages is the loss suffered, namely, the difference between the entire rent reserved and the entire rental value for the term."

In keeping with these views, the question to be tried was this, Was the rental value of the premises for the term, that is for five years, in April, 1909, of greater or less value than the rent reserved in the lease? If the former, the respondent was not damaged; if the latter, his damage was the difference between the two amounts to be fixed at the time the breach occurred. That this is the true measure of damages, is the logic of both of these cases. It is also the rule supported by the great weight of authority. *Green v. Williams*, 45 Ill. 206; *Snodgrass etc. v. Reynolds*, 79 Ala. 452, 58 Am. Rep. 601; *Tyson v. Chestnut*, 118 Ala. 387, 24 South. 73; *Minneapolis Baseball Co. v. City Bank*, 74 Minn. 98, 76 N. W. 1024; *James v. Kibler's Adm'r*, 94 Va. 165, 26 S. E. 417.

In *Green v. Williams* and *Snodgrass etc. v. Reynolds*, this rule was announced in a suit by the lessee against the lessor for the refusal of the latter to put the former in possession. In *Tyson v. Chestnut*, the same rule was announced, where the lessee had been evicted by the holder of the paramount title. In *Minneapolis Baseball Co. v. City Bank* and *James v. Kibler's Adm'r*, the same rule was declared in a suit by the lessor for the breach of the lease by the lessee. In the leading case of *Masterton v. Mayor of Brooklyn*, 7 Hill 61, 42 Am. Dec. 38, a suit to recover damages for a breach of contract to receive and pay for an article of personal property, the rule was thus stated:

"Where the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on the day of the breach is to govern in the assessment of damages. In other words, the damages are to be settled and ascertained according to the existing state of the market at the time the cause of action arose, and not at the time fixed for full performance."

In *Hopkins v. Lee*, 6 Wheat. 109, a suit by the vendee for damages for the refusal of the vendor to carry out his executory contract for the sale of land, the same rule was announced in the following language:

"The rule is settled in this court, that in an action by the vendee for a breach of contract on the part of the vendor, for not delivering the article, the measure of damages is its price at the time of the breach."

The same principle was announced in the following cases: *Kempner v. Cohn*, 47 Ark. 519, 1 S. W. 869, 58 Am. Rep. 775; *Plummer v. Rigdon*, 78 Ill. 222, 20 Am. Rep. 261; *Puterbaugh v. Puterbaugh*, 7 Ind. App. 280, 33 N. E. 808, 34 N. E. 611; *Doherty v. Dolan*, 65 Me. 87, 20 Am. Rep. 677; *Hawk v. Pine Lumber Co.*, 149 N. C. 10, 62 S. E. 752.

This doctrine is in harmony with the expressions of this court upon kindred questions. In trover, we have held that the measure of damages is the market value of the article at the time and place of conversion, with legal interest. *McSorley v. Bullock*, 62 Wash. 140, 113 Pac. 279; *Hetrick v. Smith*, 67 Wash. 664, 122 Pac. 363; *Hofreiter v. Schwabland*, 72 Wash. 314, 130 Pac. 364.

It seems proper to observe that the lease provides that "the lessee shall not conduct or carry on on said premises or suffer or permit to be carried on thereon any illegal or immoral business, or suffer or permit said premises to be used for any illegal or immoral purposes." Laws of 1909, p. 467, § 62 (Rem. & Bal. Code, § 7229; P. C. 337 § 123), provide that no municipal corporation shall grant or renew a license to any one for the sale of intoxicating or spirituous liquors or beverages within a distance of 300 feet from any armory, etc. If this property is within 300 feet from an armory, the limitation applies and that fact may be shown. In short, the question is the value of the lease for the term at the time of the alleged breach, measured by these limitations.

The respondent, over the objection of the appellant, was permitted to offer testimony as to the rental value of the

6—77 WASH.

premises from period to period during the term; that is, from April, 1909, to April, 1910, and so on during the continuance of the leasehold term, which tended to show that such value had depreciated from year to year. This was error.

The lease was admitted in evidence over the objection of the appellant. It was stipulated that it was executed in the name of the appellant by its president and secretary, but the appellant denied their authority to execute it. *The corporate seal was not attached.* There is no evidence tending to show either that these officers had been given express authority to execute the contract, or that they had been clothed with apparent authority, or that they had theretofore executed such instruments, or that they had been held out by the appellant as having such authority, or that their acts had been ratified. In short, as the record now stands, the contract was executed in the name of the appellant by its president and secretary, without authority express or implied, *without the attestation of the corporate seal,* and without any evidence tending to show ratification or estoppel. This did not make a *prima facie* case. Clarke and Marshall, Corporations, p. 2132 *et seq.; American Sav. & Loan Ass'n v. Smith,* 122 Ala. 502, 27 South. 919; *City Electric St. R. Co. v. First Nat. Exch. Bank,* 62 Ark. 33, 34 S. W. 89, 54 Am. St. 282, 31 L. R. A. 535; *Cushman v. Cloverland Coal & Mining Co.,* 170 Ind. 402, 84 N. E. 759, 127 Am. St. 391, 16 L. R. A. (N. S.) 1078.

Our statute, Rem. & Bal. Code, § 3686 (P. C. 405 § 25), provides that the corporate powers of a corporation shall be exercised by a board of trustees. In the light of this provision, and *in the absence of the corporate seal,* some evidence was required of the authority of the president and secretary, express or implied, other than the fact of the execution of the instrument. The respondent contends that the lease was admissible as evidence, and cites *McKinley v. Mineral Hill Consol. Min. Co.,* 46 Wash. 162, 89 Pac. 495; *Rowland v.*

*Carroll Loan & Inv. Co.*, 44 Wash. 413, 87 Pac. 482; *Harvey v. Sparks Brothers*, 45 Wash. 578, 88 Pac. 1108; *Carrigan v. Port Crescent Imp. Co.*, 6 Wash. 590, 34 Pac. 148, and kindred cases. In the case first cited, it was said that the evidence showed that the note in suit was executed by the president and general manager of the corporation "in the presence of the secretary and other officers of the company. . . . that the corporation had received the benefits by way of money loaned or advanced by respondent, and by way of his labor and services;" and it was held that, where a corporation "allows a person in a large measure to control its business transactions," it must be held to be responsible for his acts in the name of the corporation. In the second case cited, the corporation had by its acts and acquiescence clothed the president with authority to act for it, and had received the benefit of the services for which compensation was allowed. In the third case cited, the corporation had held out the party whose authority was denied as its managing agent, and the corporation had received the benefits of the contract. In the fourth case cited, it was held that, where a corporation names some person as its manager and as such allows him in a large measure to control all its business transactions, "it is responsible for his acts performed as manager in the name of the company." In the other cases cited from this court, there were elements of estoppel, such as knowledge and acquiescence, or the acceptance and retention of benefits flowing from the contract of the officer who assumed to act for the corporation. None of these elements was present in this case.

On the last appeal we said that there was no merit in the claim that the evidence was not sufficient to establish the execution of the contract of lease. In both of the former appeals, sufficient evidence had been offered of the execution of the lease, but that evidence was not presented in this case.

The appellant also contends that the instrument sued on is void on its face. We held otherwise on the first appeal, where we said that, whether called a lease or a contract for a

lease, or by whatever name the instrument was called, it is the "bounden contract" of the appellant, and that an action would lie for its breach. We still adhere to that view.

As we have suggested, the first suit was brought to recover the rent stipulated in the lease up to the time the action was commenced. On the second trial, there was no change of pleadings, and for this reason the judgment was again reversed. We there said:

"The cause of action being the same breach of contract, declared upon in the original complaint, there can be no question as to the right to amend so as to present issuable facts showing damage."

In harmony with this expression, an amended complaint was filed, seeking to recover damages for the breach of the contract. The appellant contends that the amended complaint so changes the cause of action as to deprive it of its property without due process of law, in contravention of the fourteenth amendment of the Federal constitution. The contention seems to us too wanting in merit to require discussion.

The respondent contends that he had a right to stand upon his contract and hold the appellant for the full amount of the rent, and that the rule for measuring damages was incorrectly announced on the first appeal. The appellant insists that, in certain respects, it is not bound by the law of the case as announced on the first appeal. These two contentions may be met together. In passing upon a similar situation, in *Seattle v. Northern Pac. R. Co.*, 63 Wash. 129, 114 Pac. 1038, we said:

"It is urged with great earnestness that the law of the case was not correctly announced upon the former hearing, . . . We are disposed, however, to treat the conclusion reached on the former hearing as the law of the case. We are aware that this rule is not an inflexible one . . . It is, however, fair to the litigants and the trial court, conducive to orderly procedure, and withal sound judicial policy. We have so ruled in many cases," citing them.

The motions for a nonsuit and directed verdict and for a judgment *non obstante* were properly denied. The respondent's counsel asked one of his witnesses whether the rental value of the property "at any time since this lease was entered into" was equal to $150 a month, and the witness answered that it never exceeded that sum.

To summarize: The law of the case is that the contract, if properly executed, is the "bounden contract" of the appellant; that the measure of damages is the difference between the rental value of the property *at the time of the alleged breach in April, 1909,* for the term, measured by the limitations in the lease, and the rent reserved for the entire term. That is, the rent reserved for the term was $21,000; if the rental value of the property at the time of the breach in April, 1909, measured by the limitations in the lease, was less than $21,000, the respondent may recover the difference; but the rental value for the full term must be fixed as of the time of the breach of the contract.

The motion for a new trial, however, should have been granted. The error in measuring damages from period to period pervades the entire record. The judgment is reversed, with directions to grant a new trial.

CROW, C. J., ELLIS, CHADWICK, and MAIN, JJ., concur.