[No. 1338-3. Division Three. March 5, 1976.]

WASHINGTON TRUST BANK, *Appellant,* v. CIRCLE K CORPORATION, *Respondent.*

*George W. Young*, for appellant.

*William D. Symmes, Eric K. Nayes*, and *Witherspoon, Kelley, Davenport & Toole*, for respondent.

GREEN, J.—Washington Trust Bank (Bank), as trustee for the trust of Fred W. Rhodes, appeals a judgment denying its specific performance of a lease and awarding it $12,500 in damages. Circle K Corporation (Circle K) cross-appeals.

The Bank raises two issues in its appeal: Whether the court erred (1) in refusing to grant specific performance, and (2) in measuring the damages. While Circle K challenges numerous findings of fact, entered or refused, the gist of its cross-appeal presents three basic issues: (1) whether the lease was void for want of acknowledgment by the lessor, and (2) whether the lease was subject to a condition precedent, *i.e.*, the procurement of a permit to remodel according to Circle K's standard plans, and (3) whether the lessor materially breached his covenant of title.

There is substantial evidence in the record to support the following factual statement:

Fred W. Rhodes owned a small store on land zoned R-1, residential in the city of Spokane. He was entitled to operate a commercial venture thereon as a preexisting nonconforming use. In the summer of 1973, Circle K learned that the premises were available for lease. After inspecting the land, Circle K offered to lease it for a period of 20 years. The real estate agent through whom Circle K became aware of the property and through whom it acted, tendered Rhodes a printed lease form in which page 2 was omitted.

Mr. Rhodes' attorney prepared the lease and added an addendum to supply various items the attorney felt were necessary. Mr. Rhodes acknowledged the lease on September 18, 1973.

The lease and the addendum were returned to the real estate agent who discovered that page 2 of the lease had not been supplied to Mr. Rhodes. The acknowledged lease together with the addendum and the missing page were returned to Mr. Rhodes. Upon his receipt of these documents, the second page was added to the lease and a second addendum was prepared. However, the new page 2 and the second addendum were added to the original document without reacknowledgment. The resulting document was acknowledged by the president of Circle K on October 5, 1973, and returned to Mr. Rhodes. To eliminate the possibility of indefiniteness, Mr. Rhodes added an additional phrase to this lease which was subsequently initialed by the president of Circle K. A memorandum to lease which referred to the engrossed lease was acknowledged by Rhodes on October 11, 1973, and by the president of Circle K on October 24, 1973. It was recorded by the county auditor in Spokane, October 31, 1973.

Prior to the time the lease was executed, the property was inspected by several representatives of Circle K. These individuals asked very few questions of Mr. Rhodes and only disclosed in a general way what they intended to do physically as far as any changes to the property were concerned. At no time, were any questions asked by anyone concerning the subject of the nonconforming use category of the land, nor was anything said by plaintiff in that respect.

The second addendum to the lease provided in its first two paragraphs:

LESSOR GRANTS TO THE LESSEE THE RIGHT (At Lessee's own costs) TO MAKE ANY ALTERATIONS TO THE BUILDING AND/OR ITS IMPROVEMENTS DEEMED NECESSARY TO CONDUCT LESSEE'S BUSINESS.

This lease is subject to a permit for remodeling and compliance with municipal and state law.

In 1973, representatives of Circle K went to the building department of Spokane and talked with a plan checker. At that time, the plan checker was shown the preliminary site plan which had been drawn by an architect for Circle K indicating changes they contemplated making to the building and parking facilities. They were advised that certain changes would not be permitted under the zoning ordinances of Spokane. No application for a building permit was ever submitted to the City of Spokane. The plan checker and his supervisor testified that a building permit could have been obtained, the only limitation being that any remodeling had to be done within the purview of the zoning laws as applied to preexisting nonconforming uses.

After the lease had been entered into, Mr. Rhodes contacted Circle K's representatives to determine if they were desirous of acquiring any or all the existing store fixtures which were in the building. Circle K indicated that it was not interested and that it would be placing its own particular fixtures on the premises. Plaintiff then removed all the fixtures from the building, selling some and placing those which were not sold on consignment for sale. A key to the premises was provided to Circle K by the Bank, and upon the Bank's request, the defendant agreed to pay for fuel and the electricity bills on the premises. Circle K was also informed by the bank that the rent was due.

On December 31, 1973, Circle K advised Rhodes as follows:

> Dear Mr. Rhodes:
>
> The addendum to the above referenced lease states that lessee may make alterations to the building or its improvements necessary to conduct lessee's business.
>
> We have been advised by our contractor that we are unable to obtain a permit to enable us to remodel the building.
>
> Accordingly, we must advise you that the lease is cancelled.

The Bank commenced action for a specific performance, or in the alternative for damages. The trial court denied specific performance but granted $12,500 damages.

■ A suit for specific performance will not lie if there is an adequate remedy at law available to the injured party. It has long been held in Washington that there is an adequate remedy at law in damages for the breach of a lease agreement. *See Oldfield v. Angeles Brewing & Malting Co.*, 77 Wash. 158, 137 P. 469 (1913); *see also Nelson v. Nelson*, 57 Wn.2d 321, 356 P.2d 730 (1960). Consequently, the trial court did not abuse its discretion in denying the Bank's request. *See* 2 Restatement of Contracts §§ 359, 361 (1932).

■ The trial court did not err in awarding the trustee, the Bank, $12,500 damages. The measure of damages is the difference between the present worth of the property with the lease less the present worth of the property without the lease. *Oldfield v. Angeles Brewing & Malting Co., supra* at 159. It was uncontroverted that the present worth of the property with the lease was $41,000. It was also uncontroverted that the present value of the property without the lease but with its nonconforming use was $28,500. The difference represented the damages available to the plaintiff. *See Woodward v. Blanchett*, 36 Wn.2d 27, 216 P.2d 228 (1950).

■ With regard to the cross-appeal, Circle K's contention that the lease is void because it was not acknowledged by the lessor is without merit. The incomplete lease, the omitted page, and the second addendum to lease constituted the contract between the parties. *See Levinson v. Linderman*, 51 Wn.2d 855, 322 P.2d 863 (1958). The reference to this contract in the acknowledged memorandum to lease incorporated the contract in the memorandum. *Turner v. Wexler*, 14 Wn. App. 143, 149, 538 P.2d 877 (1975); *Mead v. Anton*, 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949); 4 S. Williston, *Contracts* § 628, at 904 (1961); 1 Restatement of Contracts § 235(c) (1932). Consequently, the acknowledgment of the memorandum is sufficient and cured the claimed deficiency. This conclusion is further supported by the trial court's finding, supported by substantial evidence,

of part performance by the lessor so as to take the lease out of the statute of frauds.

 Assuming that the phrase, "subject to a permit for remodeling" was sufficient to create a condition precedent to the enforcement of the lease by the Bank, Circle K's second contention must still fail because there is an implicit contractual duty on the promissor to make a good faith effort to perform that condition. 3 A. Corbin, *Contracts* § 570, at 341-42 (1960). There was no evidence that Circle K applied for a building permit. The failure of their preliminary plans to be approved absent any factual basis for holding that Mr. Rhodes was aware of what type of remodeling was to be carried out by the lessees, is not a good faith attempt to perform the condition.

 The final contention on cross-appeal that the lease was void, because at the time the premises were leased to Circle K they were under a written lease to Maurice Gould, must also fail. Gould had assigned his lease to Alford who had abandoned the premises after becoming bankrupt in 1973. In a supplemental agreement and extension of leasing terms between Rhodes and Gould, Alford had expressly assumed Gould's obligations on the lease. The abandonment by Alford constituted an abandonment by Gould, thereby discharging Rhodes from any further liability on the lease between Gould and himself. 1 Restatement of Contracts §§ 165(2), 170(1) (1932), *see* 2 Restatement of Contracts §§ 385(1)(c), 280 (1932), particularly illustration 2. Gould merely stood in the same position as surety on the assignment. His interest in the land terminated upon Alford's abandonment.

Judgment affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petitions for rehearing denied May 13, 1976.

Review denied by Supreme Court August 31, 1976.